File Name: 05a0848n.06
Filed: October 17, 2005

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CHRISTY WILKERSON,            )
                             )
  Plaintiff-Appellee,        )
                             ) ON APPEAL FROM THE
    v.                       ) UNITED STATES DISTRICT
                             ) COURT FOR THE WESTERN
AUTOZONE, INC.,               ) DISTRICT OF TENNESSEE
                             )
  Defendant-Appellant.       )

Before:     **NELSON** and **SUTTON**, Circuit Judges, and **ZATKOFF**, District Judge.[*]

    **DAVID A. NELSON**, Circuit Judge.  In this action brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*., the plaintiff employee claims that the defendant employer violated the statute in bad faith by refusing to reinstate her after she took  FMLA leave.  A jury found in favor of the plaintiff, and the district court denied a defense  motion for judgment as a matter of law or, in the alternative, for a new trial.

    On appeal, the defendant argues in essence that the district court erred in its instructions to the jury, erred in entering judgment on a verdict that was not supported by the evidence, and abused its discretion in declining to grant a new trial on weight-of-the-

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

evidence grounds. Unpersuaded by the defendant's arguments, we shall affirm the district court's disposition of the case in all respects.

I

The plaintiff, Christy Wilkerson, started working for the defendant, AutoZone, Inc., in 1999. Ms. Wilkerson became pregnant in the spring of 2002 and started using FMLA leave intermittently. Between March 21 and November 6, 2002, Ms. Wilkerson took a total of approximately 110 hours of leave. On November 17, 2002, she began a continuous leave of absence from which she planned to return after the birth of her child.

Ms. Wilkerson testified that an AutoZone assistant human resources manager, Marcia Bennett, told her that the FMLA leave would include six weeks before the baby's birth and six weeks afterward. Ms. Wilkerson gave birth to her baby on December 21, 2002. She expected to return to work six weeks later, on February 2, 2003.

In fact, Ms. Wilkerson exhausted her 480 hours of yearly FMLA leave on or about January 19, 2003.[1] At no time, however, did AutoZone notify Ms. Wilkerson that her FMLA leave would expire, or had expired, on that date.

The company presented evidence that on November 19, 2002, just after Ms. Wilkerson began her continuous leave of absence, AutoZone learned that a urine sample she

---

[1] The FMLA entitles eligible employees to 12 workweeks of medical/family leave during any 12-month period. 29 U.S.C. § 2612(a). Ms. Wilkerson worked 40-hour weeks.

had provided for a random drug test was adulterated with nitrite, a chemical used to mask the presence of certain controlled substances. The matter was referred to an AutoZone attorney, Timothy Harrison, who telephoned Danita Watson, AutoZone's human resources manager, and recommended that Ms. Wilkerson be fired. Ms. Watson said that Ms. Wilkerson was on leave, and Harrison advised her "to wait until Ms. Wilkerson returned from leave and then carry out the recommendation."

Ms. Watson told her assistant, Ms. Bennett, that Ms. Wilkerson would be discharged upon her return from leave. The company's evidence indicated that Joseph Buehrle, an operations manager at the facility where Ms. Wilkerson worked, was also informed that Ms. Wilkerson would be fired because of a failed drug test.

Because a company doctor who tried to reach Ms. Wilkerson by telephone used an outdated area code and never got in touch with her, Ms. Wilkerson was not given an opportunity to explain the drug test results. Ms. Wilkerson testified at trial that she had never used illegal drugs, that she was nearly eight months pregnant at the time of the test, that she had never heard of the adulteration of urine by use of masking substances, and that because she was selected randomly for the drug test she would not have been prepared to adulterate her urine even if she had known how.

On January 22, 2003, Ms. Wilkerson telephoned Ms. Watson to inquire about returning to work before February 2. Without mentioning that the company had decided to fire her, Ms. Watson told Ms. Wilkerson she would need a doctor's note releasing her to

work. Ms. Wilkerson thereupon called her doctor's office and asked a nurse to find out whether she could go back to work early. The nurse said she would ask the doctor "and if he okayed it . . . she would send [a] fax to AutoZone."

Ms. Wilkerson's January 22 call to Ms. Watson was placed at 2:05 p.m. A few minutes later Ms. Wilkerson telephoned AutoZone again and asked operations manager Buehrle whether the doctor's note had arrived. Mr. Buehrle — who also said nothing to Ms. Wilkerson about the company's having decided to fire her — replied that he had no knowledge of a fax from the doctor. Ms. Wilkerson tried to reach Ms. Watson again at 2:25 p.m., but either was unable to get through to her or was told by Ms. Watson that the doctor's note had not yet arrived.

Within minutes of the 2:25 telephone call, Ms. Wilkerson's doctor faxed Ms. Watson a statement releasing Ms. Wilkerson to work effective January 23, 2003. Ms. Watson did not inform Ms. Wilkerson that the release had been received.

Apparently assuming that Ms. Wilkerson would return to work for her next scheduled shift, which was the January 26 night shift, Ms. Watson prepared a written separation notice that said Ms. Wilkerson was being discharged for "violation of drug policy and loss of confidence." Ms. Watson advised Mr. Buehrle that Ms. Wilkerson would be discharged when she reported to work on January 26. Mr. Buehrle then suggested that he and Ms. Watson call Ms. Wilkerson at home to save her the trip. Mr. Buehrle and Ms. Watson called the telephone number in Ms. Wilkerson's file (the correct number, it should be noted) and

reached an answering machine. Mr. Buehrle left a message asking Ms. Wilkerson to call him back.

Ms. Wilkerson returned the call on January 23, 2003, as soon as she received the message. Mr. Buehrle asked her if she had talked to Ms. Watson. Ms. Wilkerson replied that she had spoken to Ms. Watson the previous day (January 22), and Buehrle told her that was all he wanted to know.

Ms. Wilkerson then asked whether her doctor's note had been received, and Buehrle said "he hadn't seen it." Ms. Wilkerson telephoned Ms. Watson later the same day to inquire again about the doctor's note, but Ms. Watson was unavailable. Ms. Wilkerson left a message in which she gave her mobile phone and home phone numbers, but Ms. Watson did not call back.

On January 26, 2003, about an hour before the start of her shift, Ms. Wilkerson called AutoZone and spoke to operations manager Joey Hamm. She asked again about the doctor's note, and Mr. Hamm said he knew nothing about it. Ms. Watson was not at work, January 26 being a Sunday. Ms. Wilkerson did not report for work that night and did not explicitly tell Mr. Hamm she would not be coming in.

On January 27, 2003, Ms. Wilkerson telephoned Ms. Watson again about the doctor's note. Again Ms. Watson was unavailable. Ms. Wilkerson left a message for Ms. Watson to call her back. Again Ms. Watson did not return Ms. Wilkerson's call. Ms. Wilkerson did not report for work that night either.

Ms. Watson told house counsel Harrison that Ms. Wilkerson had missed two scheduled shifts. Mr. Harrison recommended a discharge pursuant to AutoZone's attendance policy. The attendance policy provided that two instances of "no call–no show" — *i.e.*, absence without calling in — "will result in immediate termination." The policy went on to say that "[f]ailure to report to work for two consecutive days without notification . . . is considered a voluntary resignation."

Ms. Wilkerson came to work on February 2, 2003, exactly six weeks after the birth of her child. At that point Ms. Watson and operations manager Ronnie Babb told Ms. Wilkerson that her employment was being terminated because of her failure either to report for work on January 26 or to call in then.

Ms. Wilkerson sued AutoZone under the FMLA. (Ms. Watson was also named as a defendant, but she was later dismissed by stipulation of the parties.) The complaint alleged that AutoZone had interfered with Ms. Wilkerson's right to reinstatement following FMLA leave and had retaliated against her for taking FMLA leave.

The case was tried to a jury, and the jury returned a verdict in favor of Ms. Wilkerson. In response to special interrogatories the jury found that Ms. Wilkerson had shown that she satisfied the statutory requirements to be returned to her job on February 2; that the preponderance of the evidence did not show that AutoZone would have discharged her [presumably on the basis of the drug test] regardless of her FMLA leave; that she was entitled to back pay in the amount of $28,000; and that AutoZone had failed to demonstrate

good faith, not having shown that it reasonably believed the discharge to be in compliance with the statute. Based on the company's failure to persuade the jury of its good faith, the district court then awarded "liquidated damages" of $28,000 pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii). Judgment was entered against AutoZone for a total of $56,000.

AutoZone moved for judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion. In so doing, the court held that a reasonable jury could find (1) that AutoZone discharged Wilkerson because of her FMLA leave; (2) that AutoZone's stated reason for the discharge — violation of the attendance policy — was a pretext; (3) that Ms. Watson's failure to return Ms. Wilkerson's telephone calls constituted interference with the plaintiff's FMLA rights; (4) that Ms. Wilkerson was on FMLA leave until the day she was discharged; (5) that AutoZone would not have discharged Wilkerson because of the drug test; and (6) that AutoZone did not act in good faith. The court declined to enter judgment for the defendant as a matter of law. Rejecting a claim of error in the jury instructions, and being satisfied with the jury's verdict, the court also declined to grant a new trial. AutoZone has filed a timely appeal.

II

We turn first to Ms. Wilkerson's claim that AutoZone "interfered" with her right to have her job restored after taking FMLA leave. AutoZone challenges the jury's determination that Ms. Wilkerson remained qualified for reinstatement as of February 2, 2003, and the company denies that it interfered with her statutory right to return.

"[T]he appellate court reviewing a Rule 50 motion looks to see if the record contains evidence upon which a reasonable trier of fact could have concluded as the jury actually did." *Williams v. Nashville Network*, 132 F.3d 1123, 1131-32 (6th Cir. 1997). Here we are satisfied that a reasonable trier of fact could have come out where Ms. Wilkerson's jury did.

An employee who takes FMLA leave is entitled to be restored to the same or an equivalent position "on return from such leave." 29 U.S.C. § 2614(a)(1). AutoZone argues that an erroneous instruction led the jury to find that Ms. Wilkerson returned from FMLA leave on February 2, 2003, when, in fact, Ms. Wilkerson had exhausted her qualifying leave approximately two weeks earlier. This mistaken finding, says AutoZone, led the jury mistakenly to conclude that Ms. Wilkerson was entitled to reinstatement on February 2.

The district court instructed the jury that an

"employer must notify an employee when leave is designated as FMLA-qualifying leave. The employer's notice to the employee that the leave has been designated as FMLA leave may be oral or in writing. If the notice is oral, it shall be confirmed in writing no later than the following payday unless the payday is less than one week after the oral notice, in which case the notice must be no later than the subsequent payday. The written notice may be in any form, including a notation on the employee's pay stub.

> An employer that does not notify an employee about designated leave as FMLA may not count the leave against the employe[e]'s FMLA entitlement if the employee was prejudiced by the . . . employer's failure to provide timely information of the FMLA designation." (JA 377-78.)

AutoZone contends that this instruction misapprehends *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002).

In *Ragsdale* the Supreme Court struck down a regulation, 29 C.F.R. § 825.700(a) (2001), under which an employer that failed to designate an employee's leave as FMLA-qualifying was prohibited from counting the leave against the employee's FMLA entitlement. See 535 U.S. at 89-96. The regulation was invalid, the Court explained, "because it alter[ed] the FMLA's cause of action in a fundamental way: It relieve[d] employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id.* at 90. By not requiring a showing of prejudice, the regulation allowed an employee to sue under the FMLA without having been denied the Act's substantive entitlements. See *id.* at 90-91.

In the case at bar the challenged jury instruction avoids the pitfall that proved to be the undoing of the regulation at issue in *Ragsdale*. The instruction comports with *Ragsdale*, it seems to us, by stating that prejudice must be shown before an employer's failure to notify its employee of the FMLA designation will bar the employer from counting the leave against the entitlement.

AutoZone suggests that Ms. Wilkerson's FMLA leave ended as a matter of law when her doctor released her to work effective January 23, 2003. The jury could reasonably find,

however, that Ms. Wilkerson was unaware of the company's receipt of the release despite her best efforts to learn from AutoZone whether a release had been received. And even if the FMLA leave did end on January 23, we think the jury was entitled to find that AutoZone interfered with Ms. Wilkerson's right to be reinstated because Ms. Wilkerson would have returned to work on January 26, the date of her next scheduled shift, but for Ms. Watson's failure to inform her that AutoZone had received the release from the doctor.

We also think a reasonable jury could conclude on equitable estoppel grounds that Ms. Wilkerson was entitled to reinstatement on February 2, 2003. Ms. Wilkerson testified that Ms. Bennett told her she had six weeks of post-partum FMLA leave, and it is undisputed that AutoZone never notified Ms. Wilkerson of an earlier end-date. In these circumstances the jury could find that AutoZone was equitably estopped to assert that the FMLA leave expired before February 2. See generally *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725-26 (2d Cir. 2001) ("Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment"). Here the jury was instructed on the doctrine of equitable estoppel and AutoZone did not object to that instruction.

If Ms. Wilkerson had a right to reinstatement on February 2, 2003, AutoZone obviously "interfere[d] with . . . or den[ied] the exercise of or the attempt to exercise" that right (see 29 U.S.C. § 2615(a)(1)) unless AutoZone would have fired Ms. Wilkerson anyway

because of the drug test. (As we pointed out in *Pharakhone v. Nissan North America, Inc.*, 324 F.3d 405, 407 (6th Cir. 2003) (internal quotation marks and brackets omitted), "[t]he right to reinstatement under the FMLA is . . . not absolute. An employer need not reinstate an employee who would have lost his job even if he had not taken FMLA leave." *Id.*)

AutoZone presented substantial evidence that it would have fired Ms. Wilkerson because of her drug test results had she returned from leave on January 26, 2003, or had she not taken leave at all. But the jury specifically rejected that evidence, answering "No" when asked whether AutoZone "would have discharged [Wilkerson] regardless of her leave under the FMLA." (JA 515.)

We cannot say that the jury's finding was baseless. AutoZone's normal policy was to discuss suspicious drug test results with the employee, and the jury might well have believed that the company would have changed its mind about Ms. Wilkerson had the company taken the trouble to locate her correct telephone number and talk with her about the test. It is undisputed, in any event, that AutoZone did not, in fact, rely on Ms. Wilkerson's test results as ground for her discharge. Mr. Harrison explained that it was "easier" to assign the supposed violation of AutoZone's attendance policy as the reason for the discharge, but the jury was not required to accept that explanation. And as discussed more fully below, the "no show no call" rationale for Ms. Wilkerson's discharge could reasonably be found to have had no basis in fact. In short we think that a reasonable jury could have found, as this jury

did find, that AutoZone wrongfully denied or interfered with Ms. Wilkerson's right to reinstatement.

III

"Liquidated damages" in an amount equal to the plaintiff's lost wages and benefits (plus interest) are awarded in FMLA cases unless the defendant proves that it acted in good faith and with reasonable grounds for believing that its actions did not violate the Act. See 29 U.S.C. § 2617(a)(1)(A)(iii) and *Chandler v. Specialty Tires of America (Tennessee), Inc.*, 283 F.3d 818, 827 (6th Cir. 2002). In the case at bar the jury did not find that AutoZone acted in good faith and with reasonable grounds for believing that it was not in violation of the statute. We are not persuaded that AutoZone succeeded in establishing its good faith as a matter of law.

For one thing, a reasonable jury could disbelieve AutoZone's assertion that it discharged Ms. Wilkerson for violation of its attendance policy. The evidence shows that Ms. Wilkerson called AutoZone both on January 26 and on January 27, 2003. Admittedly, she did not say in so many words that she would be absent from work. But she did ask Mr. Hamm, on January 26, whether her doctor's note had arrived. When Hamm said he knew nothing about it, Wilkerson asked to speak to Ms. Watson, who was not at work. We think it would be reasonable to infer that Mr. Hamm understood, or should have understood, that Ms. Wilkerson did not intend to come to work without confirmation that AutoZone had

received a release from her doctor. Ms. Wilkerson left an urgent message for Ms. Watson on January 27. Had Ms. Watson returned the call and acknowledged receipt of the doctor's note, Wilkerson would have reported to work that evening — or so the jury could have presumed.

A reasonable jury could thus conclude that AutoZone's attendance policy did not warrant Ms. Wilkerson's discharge. Ms. Wilkerson had been told that her FMLA leave ran until February 2 and that she could not return to work before then without a doctor's note. Despite leaving repeated messages for Ms. Watson and speaking with Messrs. Buehrle and Hamm, Ms. Wilkerson was unable to confirm that the release had been received. So far as she knew, she remained on FMLA leave. At least one of the calls Ms. Wilkerson made on January 26 and 27 should have led AutoZone to doubt that she would be at work before February 2.

Considering all of the evidence, to repeat, the jury was entitled to conclude that the stated reason for Wilkerson's discharge — violation of the attendance policy — had no basis in fact. That being so, the jury was not required to find that AutoZone acted in good faith. The jury found, as it was entitled to find, that Ms. Wilkerson had a statutory right to reinstatement; the jury was not required to find that AutoZone genuinely believed that Ms. Wilkerson had no right to reinstatement.

Given the wording of the special interrogatories in the verdict form, we cannot be certain that the jury thought AutoZone guilty of "retaliation." If the jury was persuaded that

the company was retaliating against Ms. Wilkerson for having taken FMLA leave, that in itself would justify the jury's finding on the good faith issue. We need not address the question whether there is sufficient evidence to support a finding of retaliation, however, because we are satisfied that the jury could properly award both actual and punitive damages based solely on the findings that AutoZone had violated the statute by denying reinstatement and had done so without a reasonable belief that it was acting in compliance with the statute.

It remains to be said, finally, that we see no basis for second-guessing the district court's denial of the motion for a new trial. The district court heard all the evidence and was not persuaded that the verdict was against the manifest weight of the evidence. Trial courts have broad discretion in deciding such questions, and we have seen nothing to suggest that the district court abused its discretion in this instance.

**AFFIRMED**.