NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0466n.06
Filed: June 29, 2007

No. 06-3587

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STANLEY COKER,                                    )
                                                  )       ON APPEAL FROM THE
    Plaintiff-Appellant,                          )       UNITED STATES DISTRICT
                                                  )       COURT FOR THE
    v.                                            )       NORTHERN DISTRICT OF
                                                  )       OHIO
GERALD T. McFAUL, Sheriff,                        )
                                                  )
    Defendant-Appellee.                           )
                                                  )

_____

BEFORE: RYAN and GRIFFIN, Circuit Judges; and HOOD, Chief District Judge.[*]

    GRIFFIN, Circuit Judge.

    Plaintiff-appellant Stanley Coker was employed by defendant-appellee Gerald T. McFaul, the Cuyahoga County (Ohio) Sheriff, as a corrections officer at the Cuyahoga County Jail from May 2001 until September 2004, when he was terminated after accumulating excessive Absence Without Leave ("AWOL") hours under the Attendance Policy applicable to sheriff's department employees. Plaintiff thereafter filed suit in state court, alleging unlawful termination under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Specifically, plaintiff averred that he was terminated on the basis of excessive absenteeism notwithstanding the fact that his absences qualified

_____

[*]The Honorable Joseph M. Hood, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation.

for leave under the FMLA. Defendant removed the case to federal district court, pursuant to the federal question jurisdiction statute, 28 U.S.C. § 1331. Following removal, plaintiff filed a two-count first amended complaint alleging, in Count I, unlawful termination under the FMLA, and in Count II, a pendent state law claim based upon promissory estoppel.

Defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) with regard to both claims, and plaintiff filed a cross-motion for summary judgment. In a Memorandum Opinion and Order dated March 31, 2006, the district court granted defendant's motion as to both Counts I and II, denied plaintiff's cross-motion, and entered judgment in favor of defendant.

In his timely appeal, plaintiff challenges only that portion of the summary judgment pertaining to his FMLA claim, Count I of the first amended complaint. For the reasons set forth below, we affirm.

I.

On May 21, 2001, plaintiff started his employment with the Sheriff's Department of Cuyahoga County, under defendant-appellee Gerald T. McFaul, Sheriff ("defendant"), as a corrections officer at the Cuyahoga County Jail.[1] His regular work schedule consisted of seven 12-hour shifts each two-week period, for a total of 84 hours of work each two-week period and 504

---

[1]At the time he was hired, plaintiff was allegedly provided with a copy of a document entitled "Your Rights Under the Family and Medical Leave Act of 1993." At his deposition, plaintiff testified that he had no recollection of receiving this document.

hours of work over a twelve-week period.[2] Plaintiff was subject to the Attendance Policy contained in the Standard Schedule of Disciplinary Offenses and Penalties for Employees of the Cuyahoga County Sheriff's Department ("Attendance Policy").

Pursuant to the Attendance Policy, tardiness for more than thirty minutes, untimely notice of an absence, absence without prior notice, absence without an authorized leave, and calling in sick when accrued sick time has been exhausted are all included within the definition of "AWOL." During 2003 and 2004, corrections officers were also subject to the requirement that "[a]n Employee who is unable to report for work, and who is not on a previously approved absence shall notify the Employer at least two (2) hours prior to the start of the Employee's scheduled work assignment unless emergency conditions prevent such notification." The Attendance Policy provides that AWOL hours are calculated on a floating 12-month reckoning period, such that AWOL time accumulated by an employee remains part of the employee's accumulated AWOL time for one year from the date of that AWOL. Thus, for instance, if an employee accrued 12 hours of AWOL time for a shift that began on January 1 of one year, those 12 AWOL hours would fall off of the employee's accumulated AWOL time on January 1 of the following year.

The Attendance Policy sets forth certain penalties for accumulated AWOL hours:

16 hours of accumulated AWOL time in the reckoning period:   Written reprimand
24 hours of accumulated AWOL time in the reckoning period:   1 day suspension
32 hours of accumulated AWOL time in the reckoning period:   3 days suspension

---

[2]Corrections officers were regularly assigned to work 12-hour shifts, alternating three-day and four-day workweeks. On alternate weeks, plaintiff would work the 6 p.m. to 6 a.m. shift on either Wednesday through Friday, or Wednesday through Sunday.

40 hours of accumulated AWOL time in the reckoning period:   10 day suspension
48 hours of accumulated AWOL time in the reckoning period:   Removal

Under the FMLA, 29 U.S.C. § 2612(a)(1), plaintiff was entitled to "a total of 12 workweeks of leave during any 12-month period" and was allowed to take this leave intermittently, rather than for one continuous period, if necessary. 29 U.S.C. §§ 2612(a)(1) & (b). Conversely, defendant was permitted by regulation to choose one of several methods for determining the 12-month period in which the 12 weeks of leave entitlement occurs.[3] Since 1995, when it first implemented the FMLA, defendant opted to calculate the 12-month period by using the "'rolling' 12-month period measured backward from the date [the] employee uses any FMLA leave . . . ." 29 C.F.R. § 825.200(b)(4). Under this formula, plaintiff was entitled to 504 hours of leave (42 hours x 12 weeks) in the rolling 12-month period. *See* 29 C.F.R. § 825.205(d).

Plaintiff initially applied for family medical leave ("FML") under the FMLA in January 2002, after his infant daughter was diagnosed with juvenile diabetes in December 2001 and her physician certified that it would be necessary for plaintiff to "take off intermittently" to provide the child "basic

---

[3]29 C.F.R. § 825.200(b) provides that an employer may choose any one of the following methods for determining the "12-month period" in which the 12 weeks of FMLA leave entitlement occurs:

(1)   The calendar year;
(2)   Any fixed 12-month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;
(3)   The 12-month period measured forward from the date any employee's first FMLA leave begins; or,
(4)   A "rolling" 12-month period measured backward from the date an employee uses any FMLA leave (except that such measure may not extend back before August 5, 1993).

medical needs and transportation."[4]  Plaintiff was informed by defendant, however, that because he had not been employed at the jail for one full year at that point in time, he was not eligible for leave under the FMLA.[5]  Plaintiff subsequently applied for FML for absences on April 5 and April 10, 2002, but his application was again denied on the ground that he had not yet reached his one-year anniversary date, May 21, 2002.  Plaintiff testified that, although he was ineligible for FML when his daughter first became ill in early 2002, defendant nonetheless excused him from work to attend to her needs.  Subsequent to his one-year anniversary date, plaintiff began to utilize FML intermittently for his daughter's health condition, and it is undisputed that plaintiff was able to use this leave without issue during the calendar years 2002 and 2003.

Plaintiff did not give advance notice that he would be absent for reasons relating to his daughter's illness, other than by complying with the general requirement that he call in two hours in advance of a scheduled shift.  In order for absences to be earmarked as FML time, plaintiff was required to submit a "Combination Form" after he returned to work.  He would then receive a letter from defendant's personnel office advising him whether or not the leave request had been granted, which he, in turn, was required to acknowledge by signature.

The parties' Stipulations specify the dates between May 21, 2003, and April 30, 2004 (the last date plaintiff was granted FML time), for which plaintiff was granted FML for his absences.

---

[4]The parties do not dispute that plaintiff's daughter's diabetes constituted a "serious health condition" within the meaning of the FMLA, 29 U.S.C. § 2611.

[5]Pursuant to 29 U.S.C. § 2611(2)(A)(i), an employee must be employed for at least twelve months by the employer in order to be eligible for FML.

The Stipulations establish that defendant granted plaintiff over 600 hours of excused absences in the preceding 12-month period based on his FML status at the point in June 2004 when plaintiff's accumulated AWOL hours reached and exceeded the 48-hour ceiling that required removal under the Attendance Policy.[6]  The absences for which plaintiff was counted AWOL were not excused absences under the FMLA which, as previously noted, entitled plaintiff to 504 hours within a 12-month period.

After plaintiff submitted a Combination Form requesting FML to apply to his absences on March 17, 18, and 19, 2004, he received written notice dated March 31, 2004, and a phone call around the same date, from the benefits coordinator, Catherine Rath, that his FML request had been received but that his FML entitlement was exhausted.  Plaintiff was directed to call the personnel office with any further questions.  Rath testified at her deposition in this matter that she discovered, in March 2004, that plaintiff inadvertently had been granted more excused time off in response to FML requests than the 504 hours he was actually entitled to under the FMLA.  Plaintiff signed for receipt of the notice on April 1, 2004, and returned it to the personnel office.  However, plaintiff testified at his deposition that he did not remember receiving the notice and did not recall having a telephone conversation with Ms. Rath about FML.  Plaintiff later supplemented his deposition testimony with an affidavit stating, "During my entire term of employment I never had any

---

[6]Specifically, in the 12-month period preceding April 21, 2004, plaintiff had been granted 576 hours of excused leave; in the 12-month period preceding May 19, 2004, he had been granted 624 hours; in the 12-month period preceding June 19, 2004, he had been granted 612 hours; in the 12-month period preceding June 23 and 24, 2004, he had been granted 588 hours; and, in the 12-month period preceding June 25, 2004, he had been granted 576 hours.

discussion with Ms. Rath when either the 42 work day limit or the rolling 12-month period were discussed."

Plaintiff claimed that the only information provided by defendant to sheriff's department employees regarding the FMLA was gleaned from defendant's website, which purportedly indicated that employees were entitled to 60 working days of FML if the leave time was not used consecutively. Plaintiff testified that he believed that his full complement of FML hours was renewed and replenished upon his submission of an updated "certification of health care provider form" (Form WH-380), which had been requested by Rath on March 23, 2004. Plaintiff also testified that he believed that his FML bank would be renewed annually on his employment anniversary date in May. Plaintiff testified that, even though he did not have any FML entitlement left between March 31 and May 21, 2004, he hoped that defendant would extend leave to him anyway if his daughter's condition required it.

Plaintiff applied for more FML in April, May, June, and July of 2004, after he took time off to attend to his daughter, but his requests were denied because his FML leave was exhausted.[7] He testified that he did not remember whether or not he called the personnel office, pursuant to the standard language in the notice letters, with any questions concerning the denial of FML. At his deposition, plaintiff stated that he did not keep track of how much FML time he had used and did not inquire as to how much leave time remained, even when he became concerned that he might be

---

[7]Some FML-requested leave for absences between April 24 and May 1, 2004, was granted because plaintiff had passed the 12-month rolling period anniversary of some hours taken in 2003.

running low on FML time. He admitted, "No, it wasn't something I thought about. Like if I ran out of family medical leave, I ran out of family medical leave before, so I didn't think about it at all."

These absences were thus considered and counted as AWOL absences. Pursuant to the Attendance Policy, on April 20, 2004, plaintiff was issued a "written reprimand" for accumulating 18.47 hours of AWOL through March 24, 2004. On May 21, 2004, plaintiff was issued a one-day suspension for accumulating 30.47 hours of AWOL through April 21, 2004. On July 13, 2004, plaintiff was issued a three-day suspension for accumulating 34.62 hours of AWOL through June 19, 2004. On June 27, 2004, he was notified of a pre-disciplinary hearing to consider removal based upon an accumulation of 70.62 hours of AWOL through June 25, 2004, followed by similar notification on August 9 regarding an accumulation of 82.62 AWOL hours as of July 17, 2004.

A combined hearing was subsequently held, after which defendant informed plaintiff that he was being terminated effective September 2, 2004, pursuant to the penalty provision of the Attendance Policy. The particular AWOL hours for which plaintiff was terminated were "late calls" on March 24 and April 21, 2004 (12 hours each); unauthorized absences for 7.70 hours on May 19, 2004, 2.92 hours on June 19, and 12-hour shift absences on June 23, 24, 25 and July 11, 2004.

On December 3, 2004, plaintiff commenced an action against defendant in state court for unlawful termination under the FMLA. Defendant removed the case to federal district court, and plaintiff thereafter filed a two-count first amended complaint, alleging unlawful termination under the FMLA in Count I (Am. Compl. at ¶¶ 1-12), and a claim of promissory estoppel in Count II (Am. Compl. at ¶¶ 13-18). Defendant filed a Rule 56(c) motion for summary judgment pertaining to both

counts of plaintiff's amended complaint. In response, plaintiff filed a cross-motion for summary judgment or, alternatively, brief in opposition to defendant's motion for summary judgment, arguing that he was entitled to relief based upon defendant's purported failure to give him notice of the intermittent leave rule and to inform him that the rolling 12-month period applied.

In a written opinion and order dated March 31, 2006, the district court granted defendant's summary judgment motion and denied plaintiff's similar motion. The district court found, with regard to Count I, that "[t]he undisputed evidence in this case demonstrates that Plaintiff repeatedly ignored warnings that his [FMLA] leave had been exhausted and took well above the time to which he was entitled[,]" that "[t]here is no question that Defendant granted Plaintiff everything that he was entitled to under the FMLA[,]" and that "[b]ecause Plaintiff received all of his FMLA benefits and has failed to demonstrate any prejudice as a result of Defendant's conduct, he cannot state a claim of unlawful termination under the FMLA." In addition, the district court held that defendant was entitled to summary judgment on Count II, plaintiff's promissory estoppel claim. A corresponding judgment in favor of defendant was entered by the district court on the same date. Plaintiff now appeals, contesting only that portion of the judgment dismissing his FMLA claim.

## II.

We review de novo the district court's grant of summary judgment. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c). This court "view[s] the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

III.

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee [or family member] has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton*, 424 F.3d at 485 (quoting 29 U.S.C. § 2612(a)(1)(D)). "It is unlawful 'for an employer to interfere with, restrain, or deny the exercise of or attempt to exercise, any right provided under [the FMLA].'" *Id*. (quoting 29 U.S.C. § 2615(a)(1)). An employer's violation of § 2615 renders it liable to an affected employee for damages and appropriate equitable relief. *Id*. (citing 29 U.S.C. § 2617(a)(1)).

Three types of leave are available to employees dealing with a serious health condition: (1) one block of leave of 12 weeks or fewer; (2) intermittent leave taken in separate periods of time due to a single illness or injury, and which may include leave periods from an hour or more to several weeks; and (3) a reduced leave schedule pursuant to which the employer reduces the employee's normal work hours, usually to a part-time basis. *Hoffman v. Prof. Med. Team*, 394 F.3d 414, 418 (6th Cir. 2005) (citing 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a)).

The regulations accompanying the FMLA provide employers with a list of options for how to determine the 12-month period in which the 12 weeks of leave entitlement occurs. 29 C.F.R. § 825.200(b).[8] The employer must apply its chosen calculation method consistently to all employees. 29 C.F.R. § 825.200(d)(1). "If an employer fails to select one of the options in paragraph (b) of this section for measuring the 12-month period, the option that provides the most beneficial outcome for the employee will be used." 29 C.F.R. § 825.200(e). Another FMLA regulation, 29 C.F.R. § 825.301, provides in pertinent part:

> (a)(1)  If an FMLA-covered employer has any eligible employees and has any written guidance to employees concerning employee benefits or leave rights, such as in an employee handbook, information concerning FMLA entitlements and employee obligations under the FMLA must be included in the handbook or other document. . . .
>
> (2)      If such an employer does not have written policies, manuals, or handbooks describing employee benefits and leave provisions, the employer shall provide written guidance to an employee concerning all the employee's rights and obligations under the FMLA. This notice shall be provided to employees each time notice is given pursuant to paragraph (b), and in accordance with the provisions of that paragraph. . . .
>
> (b)(1)  The employer shall also provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. . . .

The Department of Labor has explained that "[t]he purpose of this provision is to provide employees the opportunity to learn from their employers of the manner in which that employer

_____

[8]See Text, *supra* at 4 n.3. In the present case, defendant chose the rolling 12-month period set forth in 29 C.F.R. § 825.200(b)(4).

intends to implement FMLA and what company policies and procedures are applicable so that employees may make FMLA plans fully aware of their rights and obligations. It was anticipated that to some large degree these policies would be peculiar to that employer." 60 Fed. Reg. 2180, 2219 (Jan. 6, 1995). "Employers must inform employees of the applicable method for determining FMLA leave entitlement when informing employees of their FMLA rights." *Id*. at 2200.

"This court recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Killian v. Yorozu Auto. Tenn., Inc*., 454 F.3d 549, 555 (6th Cir. 2006) (quoting *Hoge v. Honda of America Mfg., Inc*., 384 F.3d 238, 244 (6th Cir. 2004)).

In the present case, plaintiff advances an entitlement theory of recovery, which requires him to demonstrate that (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the employer denied him FMLA benefits to which he was entitled. *Killian,* 454 F.3d at 556. *See also Edgar*, 443 F.3d at 507 (citing the five requisite elements of an FMLA entitlement claim). Here, only the last element is at issue – whether defendant's termination of plaintiff's employment denied him statutory benefits to which he was entitled.

A defendant employer's intent is not relevant under the entitlement theory of recovery; the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer. *Edgar*, 443 F.3d at 507. "By the same token, the FMLA is not a strict-liability statute."

*Id*. "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Id*. at 508. "Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id*. "Employees invoking the entitlement theory must prove that their employer interfered with or denied them an FMLA benefit to which they were entitled. . . . This inquiry is an objective one divorced from the employer's motives, with the central question being simply whether the employee was entitled to the FMLA benefits at issue." *Id.* at 511.

IV.

Plaintiff's entitlement claim centers upon defendant's alleged failure to properly notify him in writing of the method of calculation of intermittent leave and of his rights and obligations under the FMLA, contrary to 29 C.F.R. §§ 825.200 and 825.301. Specifically, plaintiff asserts that no one notified him in writing that he was entitled to 504 hours of leave over the 12-month rolling period and, in fact, the information published by defendant on its employee website purportedly indicated that 60 working days of FMLA leave, or 720 hours of leave during the rolling 12-month period, were available to plaintiff. Plaintiff maintains that the lack of information, and confusing and inconsistent nature of defendant's application of FMLA policies, led to his unwarranted termination. In support of his argument, plaintiff cites *Bachelder v. America West Airlines*, 259 F.3d 1112 (9th Cir. 2001), which requires an employer to take active steps to inform its employees of the method selected for calculating intermittent leave pursuant to 29 C.F.R. § 825.200(b).

- 13 -

In *Bachelder*, the plaintiff brought suit against her employer, alleging that it violated the FMLA when it terminated her for poor attendance. The district court granted partial summary judgment in favor of the defendant, finding that the employee was not entitled to FMLA protection for the 16 absences that occurred in the year of her firing. Following a bench trial, the district court entered judgment in favor of the defendant, finding that, in firing the plaintiff, it did not improperly consider FMLA-protected leave that the plaintiff had taken in prior years. On appeal, however, the Ninth Circuit Court of Appeals reversed and remanded, holding in pertinent part that the defendant employer did not adequately inform its employees, pursuant to 29 C.F.R. §§ 825.200 and 825.301, that it had chosen the retroactive rolling "leave year" method for calculating eligibility for FMLA leave. The *Bachelder* court noted that, although the FMLA's regulations do not contain an express notice requirement, the applicable regulations "plainly contemplate that the employer's selection of one of the four calculation methods will be an open one, not a secret kept from the employees, the affected individuals." 259 F.3d at 1127. Consequently, "[t]he only sensible reading of the regulations" is that the employer's selection of a calculating method carries "with it an obligation to inform its employees thereof." *Id.* at 1128. The court determined that, because the defendant's employment handbook did nothing more than parrot the language of the FMLA and did not spell out the four different methods of calculating leave, the handbook did not adequately inform employees of the method the employer had chosen, as required by 29 C.F.R. § 825.200(e). *Id.* at 1129. According to the court, the defendant's failure to fulfill its obligation in this regard therefore mandated application of "the option that provides the most beneficial outcome for the employee"

pursuant to 29 C.F.R. § 825.200(e). Under the particular circumstances of the case, the calendar year

method therefore applied, and the plaintiff's 16 absences were held by the court to be covered by the

FMLA. *Id.* at 1128-29.

      Plaintiff in the instant case argues that the handbook language in *Bachelder* was substantively

no different than the information that defendant herein provided to its sheriff's department

employees. Plaintiff asserts that if defendant had used an approved calculation method other than

the rolling 12-month period, he would not have been terminated under the terms of the Attendance

Policy.

In granting defendant's summary judgment motion, however, the district court accurately

noted that following *Bachelder*, the United States Supreme Court issued its decision in *Ragsdale v.*

*Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), in which it held that a plaintiff asserting a claim

based on a violation of the FMLA must demonstrate prejudice as a result of a defendant's allegedly

improper notice. As summarized by this court in *Wilkerson v. Autozone, Inc.*, 152 F. App'x 444, 449

(6th Cir. 2005):

> In *Ragsdale*, the Supreme Court struck down a regulation, 29 C.F.R. § 825.700(a)
> (2001), under which an employer that failed to designate an employee's leave as
> FMLA-qualifying was prohibited from counting that leave against the employee's
> FMLA entitlement. *See* 535 U.S. at 89-96, 122 S. Ct. 1155. The regulation was
> invalid, the Court explained, "because it alter[ed] the FMLA's cause of action in a
> fundamental way: It relieve[d] employees of the burden of proving any real
> impairment of their rights and resulting prejudice." *Id.* at 90. By not requiring a
> showing of prejudice, the regulation allowed an employee to sue under the FMLA
> without having been denied the Act's substantive entitlements. *See id.* at 90-91, 122
> S. Ct. at 1155.

152 F.App'x at 449.[9]

Here, the district court concluded that this subsequent decision, which mandated a showing

of prejudice, thus altered the rationale of *Bachelder*:

> This Court finds that, based on *Ragsdale*, it is indeed improper to impose a preemptory penalty absent a showing of prejudice. Even assuming that the notice requirement at issue in this case exists as the Ninth Circuit found in *Bachelder*, a decision that has not been adopted in the Sixth Circuit, Plaintiff may not recover unless he is able to demonstrate that he suffered prejudice as a result of Defendant's

---

[9]The *Ragsdale* Court held:

> To prevail under the cause of action set out in [29 U.S.C.] § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

> * * *

> By its nature, the remedy created by Congress requires the retrospective, case-by-case examination the Secretary now seeks to eliminate. The purpose of the cause of action is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions. To determine whether damages and equitable relief are appropriate under the FMLA, the judge or jury must ask what steps the employee would have taken had circumstances been different – considering, for example, when the employee would have returned to work after taking leave. Though the Secretary could not enact rules purporting to make these kinds of determinations for the courts, [29 U.S.C.] § 825.700(a) has this precise effect.

535 U.S. at 89, 91-92.

conduct. Because Plaintiff has been unable to make such a showing, the Court finds that summary judgment is warranted in Defendant's favor as to Count I of the Amended Complaint.

We agree with the reasoning of the district court and note that our more recent decisions have acknowledged *Ragsdale* and reinforced the necessity on the part of a plaintiff in an FMLA action to demonstrate prejudice. *See Edgar*, 443 F.3d at 508 (citing *Ragsdale* for the proposition that "[e]mployees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm"); and *Cavin v. Honda of Amer. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003) (noting that pursuant to *Ragsdale* "[e]ven when an employee proves that his employer violated § 2615, '§ 2617 provides no relief unless the employee has been prejudiced by the violation. . . .'"). *See also Austin v. Fuel Systems, LLC*, 379 F. Supp. 2d 884, 896, 900 (W.D. Mich. 2004) ("agree[ing] with *Bachelder's* conclusion that employers are required to notify employees of the method of FMLA leave calculation," but further noting that pursuant to *Ragsdale*, "any FMLA action requires a showing of prejudice").

Thus, as the district court aptly concluded, even assuming arguendo that issues of adequate notification of FMLA policies and practices similar to those in *Bachelder* exist in this case, in light of the *Ragsdale* decision, it is now "improper to impose a preemptory penalty absent a showing of prejudice." Because plaintiff is unable to make such a showing, summary judgment was properly granted.

Significantly, plaintiff does not claim that he was not afforded the full 504 hours of excused absence that he was entitled to under the FMLA during each 12-month period preceding the AWOL

hours he accumulated on April 21, May 19, June 19 and 23-25, 2004. Indeed, it is undisputed that defendant not only met, but greatly exceeded, his obligation under the FMLA to permit plaintiff up to 504 hours of excused leave each 12-month period. The evidence shows that plaintiff exhausted his FMLA leave, used more leave time than he was entitled to, kept no account of leave time used, and did not consider the consequences once his FMLA leave time was exhausted. Plaintiff received repeated notices that his FMLA benefits had been exhausted. The evidence clearly shows that plaintiff simply called off work on multiple occasions after being warned that his FML time was exhausted, hoping that perhaps he would not be held accountable. Plaintiff conceded he did not become aware of the website posting on which he purportedly relied until "very late in the game."

There is no regulatory or statutory authority to impose upon an employer the obligation to provide FML in excess of the 12-week period under these circumstances. "Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA." *Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655, 660 (N.D. Ohio 2003) (citing *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998)). Thus, plaintiff's claim cannot survive the retrospective, fact-specific prejudice inquiry required by *Ragsdale*, 535 U.S. at 91. Plaintiff is unable, under the circumstances, to demonstrate that his employer denied him FMLA benefits to which he was entitled. *Killian,* 454 F.3d at 556.

We therefore affirm the judgment of the district court.