Vanessa HOLLINS, Plaintiff,

v.

OHIO BELL TELEPHONE
CO., Defendant.

No. 3:03cv380.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

## DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 28); JUDGMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, District Judge.

The Defendant, Ohio Bell Telephone Co. ("Ohio Bell"), employed the Plaintiff, Vanessa Hollins ("Hollins"), from May 26, 1994, until it terminated her for excessive absenteeism, on November 17, 2001. Doc. # 2 (Am.Compl.) ¶¶ 7, 14. Hollins brings suit against Ohio Bell, claiming that it discriminated against her for attempting to file for leave, pursuant to and in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA" or "Act").[1] *Id.* ¶¶ 15–17. Hollins seeks reinstatement, as well as compensatory damages, liquidated damages and attorneys' fees. *Id.* at 5.

Ohio Bell has moved for summary judgment on Hollins's claim, on the following six theories: (1) Hollins is judicially estopped from bringing this claim, because she failed to disclose the claim in her previously pending bankruptcy case; (2) Ohio Bell did not violate the FMLA; (3) any agreement that was reached with Ohio Bell's union to conditionally reinstate Hollins, after her suspension pending termination, falls outside the protections of the FMLA; therefore, any claim Hollins has regarding her conditional reinstatement or termination should have been brought under Section 301 of the Labor Management Relations Act; (4) Hollins returned to work under a conditional reinstatement and she failed to meet the requisite conditions; (5) the statute of limitations has run

John H. Forg, III, Forg & Forg, Cincinnati, OH, for Plaintiff.

Bradd Nathan Siegel, Porter Wright Morris & Arthur, Columbus, OH, for Defendant.

1. In her Amended Complaint, Hollins also asserted claims for race discrimination and violation of Ohio public policy (Doc. # 2 (Am. Compl.) ¶¶ 18–24), but the parties have stipulated to the dismissal of those claims, with prejudice (Doc. # 24 (Stipulation of Dismissal)).

on Hollins's FMLA claim; and (6) even assuming that some of Hollins's denied leave requests qualified for FMLA leave, she still had more than enough non-qualifying absences to result in termination of employment. Doc. # 28 (Def.'s Sum. J. Mot.). Hollins urges the Court to deny summary judgment on her FMLA claim, asserting that there are genuine issues of material issues of fact to be resolved at trial. Doc. # 29, Attach. # 1 (Pl.'s Mem. Opp'n). Because the Court finds that the Defendant's sixth argument is well-grounded in applicable law, it will SUSTAIN the Defendant's Motion for Summary Judgment on that ground, without reaching a decision as to the Defendant's other five arguments.

## I. FACTUAL BACKGROUND

### A. *Ohio Bell's Attendance Policy*

Under the terms of Ohio Bell's attendance policy ("attendance policy" or "policy"), approved FMLA absences are excluded from the attendance guidelines therein.[2] Pl.'s Dep., Ex. D (Attendance Policy) (filed manually) at 1. The policy provides the following applicable definitions:

*Incidental Absence:* An incidental absence is defined as any minutes or hours that an associate is absent from work during scheduled work hours.... Incidental absences will be tracked by the number of cases and the number of hours and minutes that an associate is absent from work.

*Disability:* A disability is defined as the inability to work due to sickness or off-the-job injury, beginning on the eighth calendar day, above FMLA time available. This also includes disabilities for on-the-job injuries, starting from the first day of absence. All disabilities

must be approved by Ameritech's Occupational Medicine department.

*Threshold:* The threshold is the maximum number of ... incidental absences ... an associate can have within a rolling 12 month period and maintain satisfactory attendance.

*Id.* The "threshold" provided for incidental absences is "48 hours of absence or 6 cases." *Id.* The policy goes on to provide that when an associate exceeds the threshold within a rolling 12 month period, her attendance becomes unsatisfactory and a "corrective action process" begins. *Id.*

In general, the corrective action process provided in the policy includes two levels of warnings, followed by a 3 day suspension and then dismissal. *Id.* at 2. An important exception to the process, for purposes of the present case, follows:

Corrective action in addition to the process described in this pamphlet may be assessed if any associate has one case of incidental absence that exceeds 48 hours in length which is not in one of the following categories: an approved FMLA leave or approved disability due to sickness, off-the-job injury or on-the-job injury.

*Id.* In accordance with this provision, Ohio Bell's policy is to skip a step of discipline for each absence over 48 hours. Doc. # 28, Ex. B (Brownlee Aff.) ¶¶ 1, 30. Accordingly, for two absences of over 48 hours each, Ohio Bell skips first to the final warning stage and then to termination. *Id.* ¶ 30.

### B. *Hollins's Attendance Issues*

In 1999, Hollins's adult son, Naghi Hollins ("Naghi"), became quite ill and was diagnosed with end-stage renal failure. Doc. # 29, Attach. # 32 (Hollins Aff.) ¶ 6.

---

**2.** Also excluded are the following: vacation, excused work days, holidays, military leave, union leave, jury duty, death in the family and

approved, scheduled time off. Pl.'s Dep., Ex. D (Attendance Policy) (filed manually) at 1.

While awaiting a necessary kidney transplant, Naghi was required to receive various forms of dialysis, sometimes daily. *Id.* ¶¶ 7–10. At times, Naghi required Hollins to assist him with his dialysis treatment, to accompany him to various medical appointments and to help him with basic personal care needs (*e.g.*, bathing and cooking). *Id.* ¶¶ 8, 10, 15–17.

In February 2000, Hollins commenced what was to become a lengthy series of interactions with Ohio Bell, wherein she attempted to receive intermittent FMLA leave to cover the time she spent away from work caring for her son. Doc. # 29, Attach. # 32 (Hollins Aff.) ¶¶ 11–13, 18–45. Hollins's attempts to receive FMLA leave were at times successful and at time unsuccessful. *Id.*

Between February and September 2000, Hollins received two grants of approval for intermittent leave to cover that entire time period. *Id.* ¶¶ 11–13, 18. During the period of time from October 2000 through early August 2001, Hollins requested leave for all or part of the following days, with varying degrees of success:

October 2000—9 days (total of 21.75 hours)

November 2000—10 days (total of 44.25 hours)

December 2000—10 days (total of 28.75 hours)

January 2001—7 days (total of 19 hours)

February 2001—3 days (total of 24 hours)

March 2001—1 day (total of 4 hours)

April 2001—4 days (total of 13 hours)

May 2001—7 days (total of 25.25 hours)

June 2001—12 days (total of 61 hours)

July 2001—9 days (total of 38 hours)

August 2001—1 day (total of 3.75 hours)

*Id.* ¶¶ 22, 29, 43. Some of these requests were approved and some were denied. *Id.* ¶ 35 (indicating that FMLA requests for October through December, 2000, were denied); Pl.'s Dep. at 543 (filed manually) (indicating that FMLA requests for February, 2001, were approved). As to the requests it denied, Ohio Bell cites Hollins's failure to provide sufficient "medical certification" justifying the necessity of the leave, even after being given extended opportunities to correct each of the noted failures.[3] *E.g.*, Doc. # 29, Attach. # 32 (Hollins Aff.) ¶¶ 23–26; Pl.'s Dep. at 534–37 (filed manually).

Despite not having approved FMLA leave time to do so, Hollins continued to take time off from work to care for her son. *E.g.*, Doc. # 29, Attach. # 32 (Hollins Aff.) ¶¶ 29, 43. Ohio Bell counted the unapproved absences as violations of its attendance policy. *E.g.*, *id.* ¶ 35.

Based on her excessive absenteeism and in accordance with its attendance policy, Ohio Bell gave Hollins two written warnings, a 3 day suspension and placed her on indefinite suspension pending dismissal, all in February, 2001. *Id.* ¶¶ 35–38. The union intervened at this point in time and Ohio Bell agreed to reinstate Hollins, on the condition that she provide proper medical certification to support her then-unap-

3. For example, in its Memorandum in Support of its Motion for Summary Judgment, the Defendant points to the Certification of Health Care Provider, dated June 28, 2001, which the Plaintiff submitted in support of her leave requests for March through August, 2001. Doc. # 28 (Def.'s Mem. Supp.) at 31–32 (citing Pl.'s Dep., Ex. TTTT (Cert. of Health Care Provider, dtd. June 28, 2001) (filed manually)). The Defendant alleges that this Certification "does not provide all of the information the company is entitled to under the Act. Specifically, the medical certification stated that Plaintiff was needed to care for a family member who had a serious health condition requiring multiple treatments, but there was no information at all regarding the treatment plan and the amount of time Plaintiff would need to assist with the treatments." *Id.* at 32.

proved FMLA requests from November and December, 2000 (the absences for which she had been disciplined). *Id.* ¶ 39; Doc. # 28, Ex. C (Redfern Aff.) ¶ 5. Subsequent to her conditional reinstatement and until early August, 2001, Hollins continued to take time off work to care for her son and Ohio Bell continued to approve some of Hollins's requests for FMLA and to deny others, for lack of proper medical certification. *E.g.,* Pl.'s Dep. at 543 (filed manually) (indicating that FMLA requests for February, 2001, were approved); Pl.'s Dep, Ex. WWWW (FMLA Denial Ltr., dtd. Aug. 1, 2001) (filed manually) indicating that FMLA request for April 6, 2001, was disapproved.[4]

The situation changed in mid-August, 2001. Instead of taking intermittent time off work to care for her son and requesting FMLA leave to cover the absences, the Plaintiff instead took an extended leave from work, requesting personal disability leave to cover the absences. Doc. # 28, Ex. B (Brownlee Aff.) ¶ 25; Doc. # 29, Attach. # 32 (Hollins Aff.) ¶ 47. Ohio Bell denied two portions of these requested disability leave periods (covering her absences from August 6 through September 17 and from September 19 through October 8, 2001, inclusive), determining that Hollins's personal medical problems were not sufficient to warrant the requested disability leave. Pl.'s Dep., Ex. GGGGGG (SBC ltr., denying appeal of disability leave denial, dtd. Dec. 14, 2001). The unapproved disability leave days were considered chargeable absences, in accordance with Ohio Bell's attendance policy. Doc. # 28, Ex. B (Brownlee Aff.) ¶¶ 6, 30.

Ohio Bell ultimately terminated Hollins in November, 2001, because she had not provided sufficient medical certifications to support her previously denied FMLA requests, as required in her conditional reinstatement proceedings, and also because she had incurred additional, excessive, chargeable absences after her conditional reinstatement. Doc. # 28, Ex. C (Redfern Aff.) ¶ 7. The union once again commenced a review board proceeding to review Hollins's case, at which time the termination decision was upheld. Pl.'s Dep. Ex. CCCC (Redfern Ltr, dtd. Dec. 3, 2001) (filed manually).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary

---

**4.** Ohio Bell's denial of the requested FMLA leave for April 6, 2001, provides, as the basis for the denial, that, "[o]n 7/5/01 you were notified of the denial of your FMLA request and given until 7/27/01 to provide medical certification that meets FMLA requirements. Additional medical certification which would meet those requirements was not received within the allotted time period." Pl.'s Dep, Ex. WWWW (FMLA Denial Ltr., dtd. Aug. 1, 2001) (filed manually) at 5.

to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Mich. Prot. & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence,

a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

■ In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir. 1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. APPLICABLE FAMILY MEDICAL LEAVE ACT PROVISIONS

In accordance with 29 U.S.C. § 2612, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period ... [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."[5] 29 U.S.C. § 2612(a)(1)(C).

---

**5.** A "serious health condition" is defined as "an illness, injury, impairment, or physical or

In order to be entitled to the benefits of the FMLA, an employee must abide by the conditions of 29 U.S.C. § 2613 and § 2614, "which provide[ ], inter alia, that an employer may require an employee to submit a doctor's certification of the employee's [or family member's] condition, ... may require an employee to report 'periodically' on her status and her intention to return to work [and] may also require the employee to 'obtain subsequent recertifications on a reasonable basis.'" *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 554 (6th Cir.2006) (citing 29 U.S.C. §§ 2613, 2614).

If an employee fails to provide the required medical certification or recertification, the Regulations promulgated under the FMLA [6] provide that,

(a) In the case of *foreseeable leave*, an employer *may delay the taking of FMLA leave to an employee who fails to provide timely certification* after being requested by the employer to furnish such certification (i.e., within 15 calendar days, if practicable), until the required certification is provided.

(b) When the need for leave is not foreseeable, *or in the case of recertification*, an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least *15 days* after the employer's request) or as soon as reasonably possible under the particular facts and circumstances.... If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, *the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.*

29 C.F.R. 825.311(a), (b) (emphasis added).[7] The Regulations specify the extent of the permissible information that may be requested by an employer in a medical certification. 29 C.F.R. § 825.306.[8]

▮ When an employee complies with the requirements of the FMLA, the employee is entitled to certain substantive rights under the Act, including the right to take FMLA leave and the right, upon return from the leave, to be restored to the position of employment held when the

---

mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

**6.** The Secretary of Labor has Congressional authority to promulgate the Regulations under the FMLA, pursuant to 29 U.S.C. § 2654.

**7.** As to the timing for providing the required medical certifications or recertifications, the Regulations provide that, when a leave is foreseeable, the employee should provide the medical certification to the employer before the leave begins. 29 C.F.R. § 825.305(b). To the extent that this is not possible, "the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request [for the certification] ), unless it is not

practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id.*

**8.** For example, if leave is required to care for a family member, an employer may require an employee to provide, among other information, medical facts demonstrating that "the patient requires assistance for basic medical or personal needs or safety, or for transportation; or, if not, whether the employee's presence to provide psychological comfort would be beneficial to the patient or assist in the patient's recovery." 29 C.F.R. § 825.306(b)(5). Further, "the employee is required to indicate on the form the care he or she will provide and an estimate of the time period ... [as well as] the probable duration of the need." *Id.*

leave commenced or to an equivalent position. 29 U.S.C. §§ 2612, 2614; *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 486 (6th Cir.2005). The Sixth Circuit recognizes, however, that the substantive rights provided by the FMLA are not absolute. "Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir.2006).[9] More specifically, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban v. W. Publ. Corp.*, 345 F.3d 390, 401 (6th Cir.2003). On this issue, the Supreme Court opines as follows:

> To prevail under the cause of action set out in [the FMLA], an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then,

[the Act] provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation." The remedy is tailored to the harm suffered.

*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002) (citations omitted)[10]; *see also Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 727 (6th Cir.2003) (applying same rule and finding that employee had presented genuine issue of material fact about whether FMLA incident played some role in employer's termination decision, since employer considered that leave in computing excessive absenteeism). Whether an employer violates the provisions of the FMLA, then, "turns on why the employee was not reinstated." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 408 (6th Cir.2003) (quoting *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 805 (7th Cir.2001)). "If the employee cannot show that he was discharged because he took leave—or at least that his taking of leave was a 'negative factor' in the employer's decision to discharge him—he cannot show a violation of the FMLA." *Id.* (citations omitted).

9. In *Edgar*, the employer fired her because she was not medically capable of returning to work within the statutory FMLA leave period. *Edgar v. JAC Prods.*, 443 F.3d 501, 514 (6th Cir.2006). The Court noted that the "testimony of Edgar's doctors [indicating her inability to return to work] was the only competent evidence regarding [her] capacity to return before the 12–week deadline." *Id.* Finding no material facts in dispute regarding Edgar's capacity to return to work at the conclusion of the statutory leave period, the Sixth Circuit affirmed the District Court's granting of the employer's motion for summary judgment, since the decision was based on a legitimate reason unrelated to Edgar's exercise of her FMLA rights. *Id.*

10. In *Ragsdale v. Wolverine World Wide, Inc.*, the Supreme Court found that 29 C.F.R.

§ 825.700(a) (2001), under which an employer who failed to properly designate an employee's leave as FMLA-qualifying leave was prohibited from counting the leave against the employee's allotted FMLA time, was invalid, 535 U.S. 81, 89–96, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002), "because it alters the FMLA's cause of action in a fundamental way [by relieving] employees of the burden of proving any real impairment of their rights and resulting prejudice." *Id.* at 90, 122 S.Ct. 1155. "By not requiring a showing of prejudice, the regulation allowed an employee to sue under the FMLA without having been denied the Act's substantive entitlements." *Wilkerson v. AutoZone, Inc.*, No. 04–6220, 152 Fed.Appx. 444, 449, 2005 U.S.App. LEXIS 22492, **11–12 (6th Cir. Oct. 17, 2005) (citing *Ragsdale*, 535 U.S. at 90–91, 122 S.Ct. 1155).

## IV. APPLICATION OF LAW TO PRESENT CASE

■ Ohio Bell has moved for summary judgment on the Plaintiff's claim, on six different theories, with the sixth being that the Plaintiff had more than enough non-qualifying absences to result in her termination of employment, under the Defendant's attendance policy, even assuming that some of the Plaintiff's denied requests qualified for FMLA leave. Doc. #28 (Def.'s Sum. J. Mot.) at 31–35. Specifically, the Defendant points to the Plaintiff's unauthorized absences from August 6 through September 17, 2001, and from September 19 through October 8, 2001, for which the Plaintiff did not apply for FMLA leave and for which the Plaintiff applied for and was denied disability leave. Pl.'s Dep., Ex. GGGGGG (SBC ltr., denying appeal of disability leave denial, dtd. Dec. 14, 2001). As to these two blocks of absences, the Defendant argues that even if the Plaintiff had no other chargeable absences on her record, it could have properly terminated her based solely on these two absence periods, since each absence period was far in excess of 48 hours (thereby allowing the Defendant to proceed directly to termination, pursuant to its attendance policy). Doc. #28, Ex. B (Brownlee Aff.) ¶¶ 6, 30 and p. 5–6; *see also* discussion *supra* at Section IA.

In its Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff provides no countervailing evidence or argument to the Defendant's position. *See* Doc. #29, Attach. #1 (Pl.'s Mem. Opp'n). Nor does the Plaintiff, in either her Complaint or Memorandum in Opposition, contend that the Defendant wrongfully denied her requested disability leave for the above periods or that the Defendant erroneously charged her unauthorized absences for these days. *See id.;* Doc. #2 (Am.Compl.).

The Court finds the Defendant's argument to be well taken. In accordance with its attendance policy, the Defendant is well within its rights to skip its normal corrective action process and take additional corrective action for the Plaintiff's unexcused absences from August 6 through September 17, 2001, and from September 19 through October 8, 2001, since each of these absence periods far exceeded the stated 48 hour time period wherein additional corrective action is permitted by the policy. Pl.'s Dep., Ex. D (Attendance Policy) (filed manually) at 2 ("Corrective action in addition to the process described in this pamphlet may be assessed if any associate has one case of incidental absence that exceeds 48 hours in length. . . .").

Furthermore, as previously explained, both the Supreme Court and the Sixth Circuit have recognized that the substantive rights provided by the FMLA are not absolute. Even assuming that the Defendant interfered with the Plaintiff's FMLA rights or discriminated against her for exercising those rights, no violation occurs "if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir.2006). More specific to the facts of this case, an employer may lawfully terminate an employee, "preventing [her] from exercising [her] statutory rights to FMLA leave or reinstatement," in the instance where the termination would have occurred irrespective of the employee's FMLA activities, *Arban v. W. Publ. Corp.*, 345 F.3d 390, 401 (6th Cir.2003), so long as the "employee cannot show that [she] was discharged because [she] took leave—or at least that [her] taking of leave was a 'negative factor' in the employer's decision to discharge [her]," *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 408 (6th Cir.2003) (citations omitted).

In the present case, the Defendant has presented proper Rule 56 evidence, indicating that the Plaintiff's excessive absenteeism in August, September and October, 2001, warranted termination pursuant to the terms of the Defendant's attendance policy, with no consideration of the Plaintiff's FMLA requests or leave time. The Plaintiff has presented no evidence to contradict this assertion, nor has she presented a contrary argument supported by the Rule 56 evidence of record. Finding there to be no genuine issue of material fact as to whether the Plaintiff's termination would have occurred, irrespective of her FMLA activities, the Court SUSTAINS the Defendant's Motion for Summary Judgment.

## V. CONCLUSION

The Defendant's Motion for Summary Judgment (Doc. # 28) is SUSTAINED, as to its sole remaining count. Judgment is to be entered on behalf of the Defendant and against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.