*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JACKIE KILLIAN,

> *Plaintiff-Appellee,*

            *v.*

No. 04-6202

YOROZU AUTOMOTIVE TENNESSEE, INC.,

> *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 02-00039—James H. Jarvis, District Judge.

Argued: March 17, 2006

Decided and Filed: July 20, 2006

Before: BATCHELDER, CLAY, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** William S. Rutchow, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, Nashville, Tennessee, for Appellant. Michael D. Galligan, GALLIGAN & NEWMAN, McMinnville, Tennessee, for Appellee. **ON BRIEF:** William S. Rutchow, Kathryn Sawtelle Caudle, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, Nashville, Tennessee, for Appellant. Michael D. Galligan, GALLIGAN & NEWMAN, McMinnville, Tennessee, for Appellee.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Appellant, Yorozu Automotive Tennessee, Inc. ("Yorozu"), appeals the district court's judgment in favor of appellee, Jackie Killian ("Killian"), on her claim under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* (the "FMLA"). We find that Yorozu's termination of Killian violated the FMLA, and although we disagree in part with the district court's reasoning, we nonetheless affirm its judgment.

Killian began working for Yorozu as a third-shift spot welder. Over the years, she accrued enough seniority to earn a place on the first shift. She was, according to Yorozu, a good employee, and her hourly wage was among the highest available in her locality. Killian required surgery, and she requested family medical leave for the period of November 29, 2001, through December 4, 2001. As was customary, she filed her request with Yorozu's company nurse, who passed it along to the human resources department for processing. In order to qualify for leave, Killian was required

1

to submit a medical certification. Killian's doctor sent her certification via facsimile, and it stated that Killian could not return to work prior to December 10, 2001. Yorozu approved Killian's leave and scheduled her return-to-work date as December 10, 2001.

During surgery, Killian's doctor discovered that her condition was more serious than he had anticipated, and he required Killian to report for a follow-up appointment on December 11, 2001. Killian contacted Yorozu's company nurse on December 4, 2001, and requested a leave extension. The nurse reputedly told Killian, "That's fine. Get a statement and we'll extend the time." Although Killian believed that the nurse had approved her request, Yorozu claims that only the human resources department could grant such an extension. Killian, who believed that she had fifteen days to submit her certification, did not immediately call her doctor.

On December 10, 2001, Killian's supervisor contacted her and inquired about her absence. Killian informed him that the company nurse had extended her leave. The call left her unsettled, and she asked her doctor to provide a new certification to Yorozu as soon as possible. The doctor sent a new certification via facsimile on the same day. It stated that Killian would be unable to work before December 17, 2001. When Killian called the human resources department to ensure that it had received her doctor's notice, Killian's supervisor fired her.

After trying unsuccessfully to regain her job at Yorozu, Killian looked for a new first-shift job with comparable pay. She was unable to accept employment on the second or the third shifts because her husband, who was a long-haul truck driver, was often not available to care for their twelve-year old daughter. Killian checked the unemployment office, read listings in the local newspaper and inquired with friends who worked at other factories, but she was unable to find a comparable position. She decided to apply for a workforce grant in cosmetology, which she received. The grant allowed her to attend school and learn a trade. After she graduated and passed the state licensing exam, Killian found a full-time job at Images, a local hair salon.

Killian filed a complaint against Yorozu alleging that her termination violated the FMLA. After a bench trial, the district court ruled in Killian's favor and awarded her a total of $55,000 in damages. The court held that Yorozu had unlawfully terminated Killian in retaliation for exercising her FMLA rights and that Yorozu's policy, by its terms, violated the FMLA. Finally, the court found that Killian had mitigated her damages to the extent required by law. On appeal, Yorozu challenges each of the district court's findings.

## I.

Yorozu alleges that its policy– which required Killian to provide medical recertification prior to expiry of her original leave– did not violate the FMLA. Killian did not provide Yorozu with recertification until the day on which she was originally scheduled to return to work; therefore, Yorozu argues, its termination of Killian was lawful.

The FMLA provides that an eligible employee such as Killian is entitled to medical leave in the event of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). This leave is not unconditional. To garner its benefit, an employee must abide by the conditions provided in 29 U.S.C. § 2613, which provides, *inter alia*, that an employer may require an employee to submit a doctor's certification of the employee's condition. In addition, an employer may require an employee to report "periodically" on her status and her intention to return to work. 29 U.S.C. § 2614(a)(5). The employer may also require the employee to "obtain subsequent recertifications on a reasonable basis." 29 U.S.C. § 2613(e).

The FMLA regulations clarify an employee's rights and responsibilities under the act. The regulations relevant to Killian's claim can be divided into two groups: those dealing with notice and

those dealing with medical certification. We first turn our attention to notice. Whenever possible, an employee must give her employer sufficient notice of her intention to use family medical leave. 29 C.F.R. § 825.302(a). The notice may be verbal, and it "need not expressly assert rights under the FMLA . . . ." 29 C.F.R. § 825.302(c). Although an employer may require an employee to "comply with the employer's usual and customary notice and procedural requirements for requesting leave . . . . failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." 29 C.F.R. § 825.302(d). If an employee fails to give adequate notice, the employer may choose between two courses of action: it may waive the notice requirements or it may delay the employee's leave. 29 C.F.R. § 825.304(a). The regulations also provide:

> It may be necessary for an employee to take more leave than originally anticipated. Conversely, an employee may discover after beginning leave that the circumstances have changed and the amount of leave originally anticipated is no longer necessary. . . . In both of these situations, the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstances where foreseeable.

29 C.F.R. § 825.309(c).

It is clear that Killian provided Yorozu with adequate notice of her need for an extended period of leave. She contacted the company nurse on December 4, 2001, six full days before the expiration of her original leave period. Under the regulations, she could have waited until December 8, 2001. Accordingly, we find that Yorozu was required to extend Killian's leave under 29 C.F.R. § 825.309, unless she failed to provide adequate medical certification under the FMLA and accompanying regulations. Finally, even if Killian's notice had been late, Yorozu's only legal recourse would have been either to waive the notice requirement or to delay her leave. The statute and regulations do not permit an employer to terminate an employee merely for failure to provide timely notice.

Having determined that Killian provided Yorozu with sufficient notice, we turn now to the issue of medical certification. When leave is foreseeable, an employee must provide her employer with medical certification at least thirty days prior to her scheduled absence. 29 C.F.R. § 825.305(b). "When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (*which must allow at least 15 calendar days after the employer's request*), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id*. (emphasis added). The regulations detail the consequences of an employee's failure to provide an appropriate medical certification. 29 C.F.R. § 825.311 provides the following:

> (a) In the case of foreseeable leave, an employer may delay the taking of FMLA leave to an employee who fails to provide timely certification after being requested by the employer to furnish such certification (i.e., within 15 calendar days, if practicable), until the required certification is provided.
>
> (b) When the need for leave is not foreseeable, or in the case of recertification, an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least 15 days after the employer's request) . . . . If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.311 clearly and unequivocally required Yorozu to provide Killian with fifteen days from the date of its request to submit medical certification supporting her extension of leave. Yorozu requested the additional certification on December 4, 2001, and it terminated Killian six days later, on December 10, 2001. Its action was clearly a violation of the FMLA. Under 29 C.F.R. § 825.311, Killian had fifteen days to provide the certification, not six. We therefore find that Killian's medical certification, provided on December 4, 2001, was timely under the FMLA and that Yorozu's policy, to the extent that it conflicts with 29 C.F.R. § 825.305(b) and 29 C.F.R. § 825.311, is unlawful. Finally, even if Killian had failed to provide the certification in a timely fashion, Yorozu's remedy under the regulations was once again delayed leave, not termination.

Yorozu directs our attention to 29 C.F.R. § 825.310, which permits an employer to require a returning employee to provide a fitness-for-duty certification through a uniformly-applied policy. If an employee fails to provide such certification or new medical certification of a serious health condition at the end of the employee's leave period, "the employee may be terminated." 29 C.F.R. § 825.311(c). We do not believe that this provision applies to Killian's circumstances. Because she gave Yorozu adequate notice of her need for an extension under 29 C.F.R. § 825.309, Killian's leave period had not yet ended at the time of her termination. Furthermore, Yorozu has produced no evidence to suggest that Killian was required to provide a fitness-for-duty certification, a prerequisite to the regulation's application. Yorozu's employee handbook provides that employees "may be required" to provide such a certification, but we find no indication that Yorozu actually requested one from any employee, let alone Killian. As a result, Yorozu cannot rely on 29 C.F.R. § 825.311(c) to explain its termination of Killian.

## II.

Having concluded that Killian's notice and medical certification complied with the requirements of the FMLA, we now turn to the question of whether Killian is entitled to recover damages. "This court recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). In order to establish an FMLA discrimination claim, Killian must demonstrate that: (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). Killian bears the burden of demonstrating a causal connection. *Id*. She must show that the employer's stated reason for terminating her was pretextual and that the true reason for her dismissal was her medical leave. *Id*.

The district court held that Killian had established an FMLA retaliation claim. After reviewing the record and considering the parties' oral arguments, we find that the district court's holding was in error. The record contains no evidence establishing a causal connection between Killian's medical leave and her termination. Instead, the evidence reveals that Yorozu terminated her because she was absent on her return-to-work date. In other words, Killian was not terminated because she departed; she was terminated because she failed to return. Because she has not demonstrated that Yorozu's reason for firing her was pretextual, she cannot prevail on the retaliation theory provided by 29 U.S.C. § 2615(a)(2).

This does not mean that Killian cannot recover. Even in the absence of retaliation, she may still recover under 29 U.S.C. § 2615(a)(1) for damages caused by Yorozu's interference with her rights under the FMLA. In order to establish an FMLA interference claim, a plaintiff must demonstrate that: (1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave

the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

Killian has established each of the factors described above. The parties do not dispute that Killian was an eligible employee, that Yorozu was a covered employer or that Killian was entitled to leave under the FMLA. In addition, we find that Killian's notice, given orally to Yorozu's company nurse, was sufficient under 29 C.F.R. § 825.302(c) and 29 C.F.R. § 825.309. Finally, by terminating Killian, Yorozu undoubtedly interfered with her rights under the FMLA. The act provides that any eligible employee who takes FMLA leave "shall be entitled . . . to be restored" to the employee's former position or to an equivalent position. 29 U.S.C. § 2614(a). In this case, Killian was not restored at all. Consequently, we find that Yorozu interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1) and that she is entitled to recover her damages.

### III.

In its next assignment of error, Yorozu challenges the district court's holding that Killian adequately mitigated her damages. An employee's mitigation effort is one of several factors that a district court must consider when formulating an award of front pay. *Arban*, 345 F.3d at 406. The sufficiency of an employee's mitigation effort is a question of fact that we review for clear error. *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983).

In Title VII cases, we have held that the defendant bears the burden of establishing a plaintiff's lack of diligence in mitigation or the amount of her interim earnings. A defendant satisfies its burden only by establishing that there were substantially equivalent positions available and that the plaintiff did not use reasonable care and diligence in seeking such positions. *Id.* "A claimant is only required to make reasonable efforts to mitigate damages, and is not held to the highest standards of diligence." *Id.* at 624. Finally, the reasonableness of an employee's effort "should be evaluated in light of the individual characteristics of the claimant and the job market." *Id.*

The district court's finding that Killian made a sufficient effort to mitigate her damages was not clearly erroneous. The record shows that Killian used reasonable diligence and care in her job search. She inquired at the unemployment office, checked the classified ads and asked her friends about job openings in the area. Because Killian's job was a high-paying first-shift factory job that took years of seniority to acquire, she was unable to find a substantially equivalent position with another employer. This does not mean that Killian failed to mitigate her damages. The law requires a diligent effort, not fruitful one. *See Rasimas*, 714 F.2d at 624.

Yorozu argues that Killian's enrollment in cosmetology school interfered with her mitigation and should, as a result, limit the amount of Killian's award. We find Yorozu's argument unpersuasive. Killian was unemployed for eight months before entering cosmetology school. It cannot be said that she removed herself from the job market prematurely, and we cannot fault her for embarking upon a new career when there were no comparable positions available in her old one. We therefore join a number of other circuits in holding that enrollment in school after a diligent job search does not constitute a failure to mitigate. *See Miller v. AT & T Corp.*, 250 F.3d 820, 839 (4th Cir. 2001); *Dailey v. Societe Generale*, 108 F.3d 451, 456-58 (2d Cir. 1997); *Smith v. Am. Serv. Co. of Atlanta, Inc.* 796 F.2d 1430, 1432 (11th Cir. 1986); *Hanna v. Am. Motors Corp.*, 724 F.2d 1300, 1307-09 (7th Cir. 1984). Accordingly, we agree with the district court that Killian's attempts at mitigation were sufficient.

### IV.

Yorozu next challenges the district court's calculation of damages. The district court awarded Killian three months' back pay and $48,000 front pay, for a total award of $55,000. Killian

has not challenged the sufficiency or calculation of the award. We therefore review the award only to determine whether it was, as Yorozu alleges, excessive. We may disturb the award only if we find that the district court abused its discretion. *United States v. City of Warren, Mich.*, 138 F.3d 1083, 1097 (6th Cir. 1998).

The FMLA provides that any employer who interferes with an employee's rights under the act is liable for damages that include, among other things, "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation . . . ." 29 U.S.C. § 2617(a)(1). Here, the district court awarded Killian only three months' back pay even though she was unemployed for eight months prior to her enrollment in school. The award is certainly not excessive. If anything, it is insufficient to compensate Killian for her loss.

Yorozu also challenges the district court's calculation of front pay. In order to determine the front pay award, the district court computed the difference between Killian's salary at Yorozu and her expected earnings as a cosmetologist over a five-year period. Yorozu argues that the court should also have taken Killian's life expectancy and the discount rate into account. Yorozu also complains that the five-year span chosen by the district court was arbitrarily selected. We disagree.

When formulating a front pay award, district courts should consider the following: (1) the employee's future in the position from which she was terminated; (2) her work and life expectancies; (3) her obligation to mitigate damages; (4) the availability of comparable employment opportunities and the time reasonably required to find a substitute; and (5) the present value of future damages as determined through application of the appropriate discount rate. *Suggs v. ServiceMaster Educ. Food Mgmt.,* 72 F.3d 1228, 1234 (6th Cir. 1996). In this case, the district court considered the first, third and fourth factors. In addition, it obviated the need to consider the second factor by finding that, after five years as a cosmetologist, Killian's earnings would be commensurate with her wages at Yorozu. Yorozu is correct in its assertion that the district court failed to consider the fifth factor. We find, however, that the district court's error is offset by its failure to calculate interest on the award in favor of Killian as required by 29 U.S.C. § 2617(a)(1)(A)(ii) and by its failure to account for raises that Killian would have received at Yorozu. As a result, even though the district court's front pay calculation was less than ideal, we decline to grant Yorozu relief.

## V.

Yorozu's final assignment of error is that the district court impermissibly considered the testimony of a lay witness, Lou Ann Bottoms. Bottoms, who was a hair dresser from Killian's area, testified about the potential earnings of a cosmetologist in her locale. She was not personally acquainted with Killian. We review the district court's decision on evidentiary matters for an abuse of discretion. *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999).

Federal Rule of Evidence 701 limits the admissibility of lay testimony to opinions and inferences that are (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness' testimony; and (3) not based on scientific, technical or other specialized knowledge within the scope of Rule 702. There is no question that Bottoms' testimony was based on her own perceptions and that it was helpful to understanding other witnesses' testimony – hers was the only voice on the subject of Killian's expected earnings. Yorozu nonetheless argues that Bottoms' testimony was based on scientific, technical or other specialized knowledge, and was therefore inadmissible. We find Yorozu's argument without merit. Bottoms testified about personal observations and reasonable inferences drawn from those observations; therefore, her testimony did not fall within the purview of Rule 702. Finally, even if Bottoms' testimony had been the inadmissible opinion of an unqualified expert, we would still find no abuse of discretion. Because the proceeding was a bench trial, Bottoms' testimony could not unduly

influence a jury, and the district court used Bottoms' testimony to *reduce* the award requested by Killian.  Accordingly, Yorozu has no cause for complaint.

Based on the foregoing, we **AFFIRM** the judgment of the district court.