NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0577n.06

Nos. 07-4320, 07-4329

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 18, 2009**
LEONARD GREEN, Clerk

MARTIN ALLEN,

        Plaintiff-Appellant, Cross-Appellee,

v.

BUTLER COUNTY COMMISSIONERS,

        Defendant-Appellee, Cross-Appellant.

        ON APPEAL FROM THE UNITED
        STATES DISTRICT COURT FOR THE
        SOUTHERN DISTRICT OF OHIO

                                    /

BEFORE:    BATCHELDER, Chief Judge, CLAY, Circuit Judge; and COX, District
              Judge.[*]

**COX, District Judge**. Butler County, Ohio ("the County") terminated the employment of its employee, Martin Allen ("Allen"), for violating the County's paid sick leave requirements, and for improperly flexing his scheduled work hours. Allen contended that the County's paid sick leave requirements conflicted with the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., and filed suit against the County. Both parties filed cross-motions for summary judgment before the lower court. The lower court granted partial summary judgment for Allen on the issue of FMLA liability, and allowed the case to proceed to jury trial on the issue of damages. At trial, the lower court allowed the County to present evidence that it would have fired Allen despite the conduct Allen claimed violated the FMLA. The jury returned a verdict for the County. Following trial, Allen filed a motion for attorney fees under the FMLA, which the lower court denied.

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

Allen filed a timely appeal to this Court, wherein he argues that: 1) the lower court erred in not granting Allen's motion for attorney fees; and 2) the lower court erred in allowing the County to present evidence showing that the County was justified in terminating Allen for reasons outside the scope of Allen's FMLA suit. The County filed a cross-appeal, wherein it argues that the lower court erred by granting partial summary judgment in favor of Allen, and not in favor of the County, on the issue of FMLA liability. For the reasons that follow, we agree with the County's argument on cross-appeal. We therefore **REVERSE** the lower court's grant of partial summary judgment for Allen, and **REMAND** with instructions to grant summary judgment in favor of the County. Because this Court reverses the lower court's summary judgment in favor of Allen, and instead remands with instructions to grant summary judgment in favor of the County, the remainder of Allen's issues on appeal are moot.

## BACKGROUND

The County hired Allen as an Instrument Technician for its Department of Environmental Services on November 22, 1993. Thereafter, Allen became a member of the American Federation of State, County and Municipal Employees, AFL-CIO ("Union"), which had a Collective Bargaining Agreement ("CBA") with the County. The CBA's paid sick leave requirement was as follows:

> Employees are responsible for contacting the Employer for each day of an absence in accordance with this Section, unless the Employee is hospitalized or has provided a written doctor's statement specifying the anticipated date of return.

Aside from incorporating the FMLA into its provisions, the CBA's sick leave policy outlined the call-in process all Union employees were required to follow in order to receive sick leave benefits. This paid leave policy was separate and distinct from the FMLA policy.

2

Allen began experiencing health problems in 2002, coincidentally the same time he and his wife were going through a divorce. The County claims Allen's work performance began to deteriorate at that time, including refusals by Allen to complete assigned tasks. As a result, Allen was issued his first written reprimand on December 11, 2002. After receiving this reprimand, Allen allegedly made untrue and disparaging statements about his immediate supervisor, which led to a second disciplinary action.

Allen and the Union agreed to settle this second disciplinary issue with the County on April 16, 2003. Allen agreed to a three-day unpaid suspension and waiver of any claims he may have had, in exchange for the County not terminating him.

Despite the April 2003 settlement agreement between Allen and the County, Allen was soon again involved in disciplinary issues. This led to another ten-day unpaid suspension on September 13, 2003. The Union filed a grievance against the County in response to this suspension, and in October of 2003, while that grievance was pending, Allen received yet another pre-disciplinary notice.

To resolve the September and October 2003 disciplinary issues, Allen and the Union voluntarily entered into a "last chance agreement" with the County on December 1, 2003. Under this agreement, Allen received an additional ten-day unpaid suspension, and was placed on what the County termed "final warning status." Allen further agreed that if he failed to comply with any of the County's requirements for the use of leave, or for any other disciplinary offenses, he understood that his employment would be immediately terminated.

In addition to these other disciplinary problems, Allen had previously been informed by his supervisors to not "flex" his time (i.e., punch in early and then punch out earlier than the end of his expected shift). Despite this prohibition, however, Allen repeatedly flexed his hours on several work days between May 18 and May 28, 2004.

On June 1, 2004, before the County could provide Allen with yet another pre-disciplinary notice for these "flex time" violations, Allen called into work claiming he would be seeing a doctor that day due to a personal illness. As Allen was unsure when he would be returning to work, his supervisor advised him that his requested leave would be classified as FMLA leave pending certification, instructed him to have his doctor complete an FMLA certification form, and instructed Allen that he would be required to call in daily pursuant to the CBA's provisions on paid sick leave.

By June 10, 2004, over a week after Allen began missing work due to his personal illness, Allen still had not provided the County with a written doctor's note specifying his anticipated date of return to work. On that same day, Allen failed to call in his absence as required by the CBA. The County treated this failure to call in as another disciplinary offense, and scheduled yet another disciplinary hearing for Allen to address both Allen's failure to call in during his paid sick leave, and his purported "flex time" violations.

At the ensuing disciplinary hearing, held on July 29, 2004, the County found that Allen had failed to abide by the CBA's requirement for daily call-in while on sick leave without FMLA certification. The County also found that Allen had improperly "flexed" his work hours on multiple occasions between May 18, 2004 and May 28, 2004. As both of these disciplinary infractions

4

violated Allen's "last chance agreement" with the County, the County terminated Allen's employment, effective August 4, 2004.

Allen filed suit alleging that the County interfered with his right to FMLA leave under 29 U.S.C. § 2615(a)(1). Both parties filed cross-motions for summary judgment in the lower court, Allen arguing that the County violated the FMLA interference provisions as a matter of law, and the County arguing that their call-in procedures did not interfere with Allen's FMLA rights. The lower court granted partial summary judgment for Allen, finding that the County's call-in policy put unreasonable burdens upon an individual attempting to access FMLA leave. The case proceeded to jury trial on the issue of damages.

Before trial, the lower court denied Allen's motion *in limine* to prevent the County from arguing that Allen would have been fired despite the County's FMLA violations. The County sought to bring forth evidence that, under the last chance agreement, Allen would have been fired for his "flex time" violations. The lower court allowed the County to present such evidence, and the jury returned a verdict in favor of the County, awarding Allen no damages for his FMLA claim.

After trial, Allen filed a motion for attorney fees pursuant to 29 U.S.C. § 2617(a)(3), which allows a "prevailing party" in an FMLA action to claim reasonable attorney fees. Allen contended that, as he had been granted partial summary judgment on the liability issue by the lower court, this entitled him to attorney fees. The lower court disagreed, and denied the award.

On appeal, the County challenges the lower court's grant of partial summary judgment. Allen also appeals the lower court's evidentiary ruling denying his motion *in limine*, as well as the lower court's denial of his motion for attorney fees.

ANALYSIS

The County appeals the lower court's grant of partial summary judgment for Allen on the issue of FMLA liability. The Court reviews summary judgment decisions by the lower court under a *de novo* standard. *Cavin v. Honda of America*, 346 F.3d 713 (6th Cir. 2003).

The FMLA, 29 U.S.C. § 2601 *et seq*., provides for unpaid leave for up to twelve weeks in a twelve month period for employees with a serious medical condition. 29 U.S.C. § 2612(a)(1). These twelve weeks of leave may be taken continuously in one block of time, or intermittently when medically necessary. 29 U.S.C. § 2612(b)(1).

FMLA leave is generally unpaid leave, but "[t]he Act encourages businesses to adopt more generous policies, and many employers have done so." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002). Congress encouraged the enactment of such additional programs, noting that "[n]othing in this Act. . .shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act." *Id*. at 87, *citing* 29 U.S.C. § 2653. When an employer elects to offer such additional paid benefits, the employer is within its rights to count such leave toward the twelve week FMLA guarantee, "[a]s long as these policies meet the Act's minimum requirements. . . ." *Id*.

The FMLA regulations clarify an employee's rights and responsibilities under the Act, including an allowance for employers to run paid leave programs concurrent with unpaid FMLA leave:

> Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. *If an employee does not choose to substitute*

6

> *accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave.* The term "substitute" means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid leave. Accordingly, the employee receives pay pursuant to the employer's applicable paid leave policy during the period of otherwise unpaid FMLA leave. An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employers normal leave policy. *When an employee chooses, or an employer requires, substitution of accrued paid leave, the employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment.* See § 825.300(c). If an employee does not comply with the additional requirements in an employer's paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies.

29 C.F.R. § 825.207(a) (emphasis added). This Court, albeit in an unpublished opinion, recognized that § 825.207(a) allows employers to run paid leave and unpaid FMLA leave concurrently. *See Hicks v. LeRoy's Jewelers, Inc.*, 2000 WL 1033029, *4 (6th Cir. July 17, 2000) (". . .the regulations clearly provide that an employee's FMLA leave may run concurrently with paid medical or sick leave").

In the instant case, Allen was properly informed by the County of the requirements expected of him to receive sick pay during his FMLA leave. However, the relevant issue in this case - what happens when an employer runs sick leave concurrently with FMLA leave and the employee violates the more stringent requirements of the paid sick leave policy - is an issue of first impression for this Court.

The Court begins its analysis mindful of its prior holding in *Edgar v. JAC Products*, 443 F.3d 501 (6th Cir. 2006). In *Edgar*, a terminated employee alleged that his termination as well as the employer's actions prior to termination constituted FMLA violations. Edgar suffered from extremely

high blood pressure, and his employer required him to have his doctor fill out a certification form before it would certify his FMLA leave. *Edgar* at 504-05. This Court upheld the employer's requirement for medical certification, holding that "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id*. at 508. Thus, this Court has already held that the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation.

The dissent regards our reliance on *Edgar* as misplaced, arguing that the County had no reason for terminating Allen which was "legitimate and unrelated to the exercise of FMLA rights." Dissent at 6 (quoting *Edgar*, 443 F.3d at 508). The dissent further argues:

> [i]t cannot be said that Allen's failure to call in was somehow unrelated to the exercise of his FMLA rights; Allen was required to call in sick *precisely because* he was out on leave which was undisputedly FMLA-qualified leave.

*Id*. at 7 (emphasis in original). While we share the dissent's concern that employers must proffer such legitimate, unrelated reasons for terminating an employee, here, the County had not one, but *two* proffered reasons for terminating Allen: 1) his "flex time" violations; and 2) his failure to abide by the paid sick-leave call-in requirement. The County fired Allen for *both* violations.

This Court has also noted that employers may rightfully terminate an employee for failure to comply with notification and medical certification procedures inherent in FMLA regulations. *See Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549, 555 (6th Cir. 2006). Though *Killian* held that the employer in that case could not demonstrate such violations by its employee, the Court noted as follows with respect to the relevant FMLA regulations:

8

> Yorozu directs our attention to 29 C.F.R. § 825.310, which permits an employer to require a returning employee to provide a fitness-for-duty certification through a uniformly applied policy. If an employee fails to provide such certification or new medical certification of a serious health condition at the end of the employee's leave period, the employee may be terminated.

*Killian*, 454 F.3d at 555 (internal citation omitted).

While the issue in this case - whether an employee on FMLA leave may be terminated for violating the more stringent requirements of a concurrent paid sick leave policy - is one of first impression for this Court, other circuits have stated that an employee can be required to comply with the reasonable requirements of an employer's sick leave policy while on FMLA leave. In *Gilliam v. U.P.S.*, 233 F.3d 969 (7th Cir. 2000), the Seventh Circuit held that the FMLA does not preclude an employer from enforcing a collective bargaining provision requiring the employee to notify the employer of their intended date to return to work. "[N]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans." *Gilliam* at 972. The Seventh Circuit also has allowed an employer to impose more burdensome "return to work" requirements for individuals on FMLA leave than were mandated by statute. *Harrell v. United States Postal Service*, 445 F.3d 913, 923 (7th Cir. 2006).

The facts of this case are analogous to those of *Callison v. City of Philadelphia*, 430 F.3d 117 (3d Cir. 2005). Callison was a municipal employee of the City of Philadelphia, and had a penchant for abusing his paid sick leave. *Callison* at 118. "Because of the significant amount of [Callison's] absences, the City placed Callison on a Sick Abuse List on October 30, 2000." *Id*. Notwithstanding

9

that status, however, Philadelphia's employee manual contained the following requirement for all employees on paid sick leave:

> During regular working hours, when an employee is home on sick leave, the employee must notify the appropriate authority or designee when leaving home and upon return.

*Id*. Callison, while on the Sick Abuse List, took a sick day on January 8, 2001. That same day, Callison left his home without informing his employer of his intention to do so, and missed a telephone call from an investigator. *Id*. at 119. Callison was charged with a violation for this infraction, and while on subsequent FMLA leave from January 24 to April 17, 2001, was repeatedly not at home without notifying the City's hotline, resulting in additional unpaid suspensions. *Id*.

In his FMLA interference suit, Callison argued "that the FMLA anti-abuse and eligibility provisions conflict with the City's call-in requirement in its sick leave policy and therefore the requirement should not have applied" while he was on leave. *Id*. at 120. "He asserts that once an employee is pre-approved for FMLA leave, he/she should be left alone." *Id*. (internal citations omitted). The Third Circuit rejected this argument:

> [T]he [lower] Court reasoned that the purpose of the FMLA is not compromised by this policy because it "neither prevents employees from taking FMLA leave nor discourages employees from taking such leave. *It simply ensures that employees do not abuse their FMLA leave.* We agree. . . [T]he eligibility requirements contained in 29 U.S.C. § 2612(a)(1) do not conflict with the call-in procedure. Unlike the eligibility provision, the *call-in procedure does not serve as a pre-requisite to entitlement of FMLA leave.* Rather, the procedure merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA. The purpose of this procedure is to provide an additional safeguard against sick leave abuse by employees. . .*Nothing in the FMLA prevents employers from*

10

> *ensuring that employees who are on leave from work do not abuse their leave*, particularly those who enter leave while on the employer's Sick Abuse List.

*Id*. at 120-21 (emphasis added).

Just as in *Callison*, here the CBA Allen's Union signed with the County required individuals on paid sick leave to perform requirements not necessary under the FMLA: Allen was required to either 1) procure a note from a doctor letting his employer know when his employer could expect Allen's return; or 2) call the County daily with updates as to his condition. Just as in *Callison*, this procedure "merely sets forth obligations of employees who are on leave, regardless of whether the leave is pursuant to the FMLA." *Callison* at 120.

Further, just as was the case in *Callison*, the County's call-in requirement helps "ensur[e] that employees who are on leave from work do not abuse their leave. . . ." *Callison* at 121. The Third Circuit found such motivation by employers particularly persuasive when faced with employees with a penchant for abusing such privileges, noting that "those who enter leave while on the employer's Sick Abuse List" were rightly subjected to such policies. *Id*. Like the employee in *Callison*, here the County had documented a history of personnel issues with Allen. In *Strickland v. Water Works and Water Sewage Bd. of the City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001), however, the Eleventh Circuit found that the fact an employee had failed to exhaust his paid sick leave when he allegedly requested FMLA leave did not preclude the city from being liable for discharging him. The *Strickland* court described the right of an employer to substitute paid leave for unpaid FMLA leave, but noted as follows:

> Neither Congress nor the Department of Labor could have intended. . .to allow employers to evade the FMLA by providing their employees with paid sick leave

11

> benefits. Otherwise, when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act.

*Strickland*, 239 F.3d at 1205. This Court agrees that employers cannot evade their responsibilities under the FMLA. However, the facts of *Strickland* are distinguishable from the instant case. Here, the County did not classify Allen's leave as non-FMLA. Instead, the County provisionally classified the leave as FMLA leave, pending Allen's furnishing the necessary certification, and merely imposed call-in requirements to police its employees' use of paid sick leave; Allen remained on concurrent FMLA leave the entire time, and remained entitled to all protections afforded by that Act with respect to his right to unpaid leave. In fact, Allen does not claim that he was denied FMLA leave.

The lower court's holding stands in contrast to the analyses of our sister circuits in similar situations. The lower court's holding was as follows:

> *The Court finds as a matter of law that Defendants' daily call-in requirement conflicts with the notice requirements of the FMLA* for unforeseeable leave. . . *There is no requirement that once the employee gives notice of the need for leave and the employer is aware if the reason for the leave, the employee must provide additional notice by calling in every day* during the period of leave. In this regard, the CBA is more stringent than the FMLA. Defendant may not lawfully interfere with Plaintiff's FMLA rights by enforcing stricter notice requirements, regardless of whether those requirements were contained in the CBA or in an internal company policy.

(JA pp.43-44)(emphasis added). We disagree, and instead hold that the County's internal call-in policy neither conflicts with nor diminishes the protections guaranteed by the FMLA. In so holding, we adopt the reasoning of the Third Circuit in *Callison*, that "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave. . . ." *Callison*, 230 F.3d at 121.

12

Pursuant to the terms of Allen's December 1, 2003 "last chance agreement" with the County, Allen agreed that the County could terminate his employment for any further violations of the County's leave requirements, or for any other disciplinary offenses. At the July 29, 2004 disciplinary hearing, the County found that Allen had violated the "last chance agreement" in two ways: Allen's failure to abide by the CBA's call-in policy; and Allen's improper "flexing" his work hours without prior approval. Under the "last chance agreement," these violations gave the County the authority to terminate Allen's employment, and the County exercised that authority in terminating Allen effective August 4, 2004.

The lower court found the County liable for interfering with Allen's right to take FMLA leave. We disagree for the reasons stated above, and therefore **REVERSE** and **REMAND** with instructions for the lower court to grant summary judgment in favor of the County. In light of this conclusion, the Court need not reach any of Allen's issues on appeal.

CONCLUSION

For these reasons, we **REVERSE** the lower court's grant of partial summary judgment in favor of Allen, and **REMAND** with instructions to grant summary judgment in favor of the County.

**CLAY, Circuit Judge, dissenting.** The majority holds that an employer can terminate an employee for violating the more stringent requirements of its paid sick leave policy while an employee is out on concurrent FMLA leave. This conclusion is in direct contradiction to the guidance set forth in 29 C.F.R. § 825.207—a regulation that speaks directly to the matter at hand—and I find the majority's interpretation of (and lack of adherence to) this regulation to be logically and legally unsupported. Moreover, the majority opinion disregards material factual disputes as to whether Allen was terminated, at least in part, because he took leave that was protected by the FMLA. Because of the existence of these questions of fact, I would find that summary judgment could not have been properly granted to *either* party in this case, would reverse the district court's grant of partial summary judgment to Allen, and would remand the case for a jury trial with respect to all issues. I therefore respectfully dissent.

## I.

The majority and I agree that an employer can implement a paid sick leave policy that runs concurrent with unpaid FMLA leave even though the paid sick leave policy may impose procedural requirements that are more stringent than those set forth in the FMLA. *See* 29 C.F.R. § 825.207*; Hicks v. LeRoy's Jewelers*, 2000 U.S. App. LEXIS 17568 (6th Cir. July 17, 2000). However, we plainly disagree as to the primary issue presented by this case: whether an employer violates the FMLA when it terminates an employee for violating the more stringent requirements of its concurrent paid sick leave policy.

14

The majority opinion makes this issue appear unduly complicated. However, 29 C.F.R. § 825.207 plainly addresses the matter at hand. The regulation, entitled "Substitution of paid leave," states:

> Generally, FMLA leave is unpaid leave. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute accrued paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for unpaid FMLA leave. The term "substitute" means that the paid leave provided by the employer, and accrued pursuant to established policies of the employer, will run concurrently with the unpaid FMLA leave. Accordingly, the employee receives pay pursuant to the employer's applicable paid leave policy during the period of otherwise unpaid FMLA leave. An employee's ability to substitute accrued paid leave is determined by the terms and conditions of the employer's normal leave policy. When an employee chooses, or an employer requires, substitution of accrued paid leave, the employer must inform the employee that *the employee must satisfy any procedural requirements of the paid leave policy **only in connection with the receipt of such payment**. See § 825.300(c). **If an employee does not comply with the additional requirements in an employer's paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave**. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies*.

*Id.* (emphasis added).

Applying the plain text of this regulation, it is clear that Allen was required to "satisfy any procedural requirements of the paid leave policy *only in connection with the receipt of such payment.*" *Id.* (emphasis added). When he failed to comply with the procedural requirements of the paid leave policy (i.e., by failing to call in each day), the County was within its rights to "refuse to substitute accrued paid leave" but Allen "remain[ed] entitled to take unpaid FMLA leave." *Id.* The County did not afford Allen this right. Instead, it fired him for failing to call in on a daily basis,

without allowing him to continue his leave as unpaid FMLA leave. This action was plainly prohibited, and the majority's conclusion to the contrary is unsupportable.

This Court addressed similar circumstances in *Cavin v. Honda of Am. Mfg.*, 346 F.3d 713 (6th Cir. 2003). In *Cavin*, an employee was terminated for twice violating his employer's leave policy, once in June of 1999 by failing to provide proper notice of his intention to take leave, and once in October of 1999 by failing to timely submit a medical certification form.[1] The employee argued that his employer interfered with his FMLA rights when it denied a portion of his June 1999 leave and disciplined him. *Id.* at 719. This Court stated "we agree with Cavin that the FMLA does not permit an employer to limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Id.* at 720.

In the instant case, as in *Cavin*, the County violated the FMLA when it terminated its employee for "fail[ing], to comply with internal procedural requirements that are more strict than those contemplated by the FMLA." *Id.* To be sure, the employer in *Cavin denied* the employee his June leave because of his failure to provide what it deemed proper notice, while in the instant case, Allen was provisionally *granted* concurrent paid and FMLA leave but fired before he was reinstated. However, Allen's right to be reinstated or to continue to receive FMLA leave is no less compelling than his right to have his request for leave approved in the first place. *See id.* at 726-27 (in an FMLA interference claim, a termination based even in part on the use of FMLA-qualified leave can violate

---

[1]On appeal, the employee in *Cavin* "chose to simplify his claim" by appealing only the June 1999 denial of FMLA. *Id.* at 718.

the FMLA) (collecting cases); *see also Edgar v. JAC Prods.*, 443 F.3d 501, 507 (6th Cir. 2003) (acknowledging that improper termination of employment based on conduct related to the FMLA would constitute FMLA interference). *Cavin* therefore reinforces 29 C.F.R. § 825.207's provision that an employee who fails to satisfy the procedural requirements of an employer's stricter leave policy remains entitled to take unpaid FMLA leave. *See id.* at 722 ("Central to the purposes of the FMLA is that its provisions apply even where the entitlements created by the Act are in excess of those that an employer would be willing or able to provide on its own.") (internal quotation marks and citations omitted).

The majority points to no cases that suggest that an employee on concurrent FMLA leave can be terminated for failing to meet the requirements of the employer's paid leave policy. As the majority acknowledges, this is an issue of first impression in this Circuit. In fact, this Court's unpublished decision in *Hicks*, 2000 U.S. App. LEXIS 17568, is the only case in which this Court interprets § 825.207. The case is not particularly helpful, however, as it merely confirms a point on which we agree—that an employer can provide its paid sick leave concurrently with FMLA leave. Likewise, there are notably few cases in which our sister circuits interpret § 825.207. Most of the cases that do, like *Hicks*, merely confirm that an employer may provide sick leave concurrently with FMLA leave and that an employee cannot demand them consecutively if the employee was given proper notification by his or her employer. *See, e.g., Dotson v. BRP US Inc.*, 520 F.3d 703, 708 (7th Cir. 2008); *Slentz v. City of Republic*, 448 F.3d 1008, 1010 (8th Cir. 2006). Even fewer cases address a situation in which an employee was terminated after he failed to comply with his

17

employer's paid leave policy. This is not surprising because § 825.207 clearly and unambiguously resolves the question.

However, *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199 (11th Cir. 2001), is instructive. *Strickland* involved an employer who terminated an employee after he left the job site because he was suffering a diabetic attack. On summary judgment, the district court held that the FMLA provided no relief because, at the time of the employee's discharge, he was covered by the employer's paid sick leave policy. *Id.* at 1201-02. On appeal, the Eleventh Circuit addressed whether the employee was entitled to the protection of the FMLA under those circumstances.

As noted by my colleagues, the *Strickland* court explained that "Neither Congress nor the Department of Labor could have intended . . . to allow employers to evade the FMLA by providing their employees with paid sick leave benefits." *Id.* at 1205. Otherwise, the court explained, "when an employee misses work for an illness that qualifies under both his employer's paid sick leave policy and the FMLA, his employer could elect to have the absence count as paid sick leave rather than FMLA leave and would then be free to discharge him without running afoul of the Act." *Id.* The *Strickland* court therefore held that "the district court erred in holding that an employee who has not exhausted his paid sick leave is not entitled to the protections of the FMLA." *Id.* at 1206.[2]

---

[2]The *Strickland* court noted that the district court's confusion was understandable, given the "unartful and unfortunate use of language in the FMLA and its accompanying regulations indicating that paid leave may be used as a 'substitute' for unpaid FMLA leave." *Id.* at 1204. The court went on to explain that, as § 825.207 expressly states, "substitute" merely means to run concurrently.

In sum, *Strickland* supports the proposition that the full protections of the FMLA apply when an employer elects to provide FMLA leave concurrent with its own sick leave. In this case as well, the County was not allowed to evade the protections of the FMLA and terminate Allen while he was out on protected leave.

The majority's arguments to the contrary are unpersuasive. First, the majority points to *Edgar*, 443 F.3d 501. In *Edgar*, this Court affirmed a grant of summary judgment after holding that an employer did not violate the FMLA when it fired an employee who was indisputably unable to return to work at the conclusion of the 12-week period of statutory leave. *Id.* at 514. The majority opinion does not attempt to argue that *Edgar* is factually similar to this case, or even that it addresses an employee who uses paid sick leave and FMLA leave concurrently. Instead, it points to a passage in which the *Edgar* Court states that "interference with an employee's FMLA rights [*e.g.*, by dismissing or refusing to reinstate an employee on FMLA leave] does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in challenged conduct." Slip op. at 7 (quoting *Edgar*, 443 F.3d at 508).

In applying *Edgar*, the majority states that "the County had not one, but *two* proffered reasons for terminating Allen: 1) his 'flex time' violations; and 2) his failure to abide by the paid sick-leave call-in requirement" and that "[t]he County fired Allen for *both* violations." Slip op. at 8 (emphasis in original). To be sure, the County can legitimately *claim* that it fired Allen based on his use of flex time, but it is by no means clear that the County actually fired (or would have fired) him on this basis. Allen was fired almost immediately after he took protected FMLA leave and the County's own termination paperwork states that Allen was fired for improper call-in of sick leave while

19

making no mention of flex time.[3]  A jury could quite rationally reject an argument that Allen was

fired or would have been fired based on improper use of flex time.  *See Edgar*, 443 F.3d at 508

(explaining that an employee is lawfully dismissed "only if the dismissal would have occurred

regardless of the employee's request for or taking of FMLA leave") (citation omitted).  Whether this

proffered reason is pretext, and the concomitant legitimacy of the County's "same result anyway"

defense, are disputed issues of fact that preclude a grant of summary judgment.

The majority also fails to explain how the County could terminate Allen for a "legitimate

reason unrelated to the exercise of FMLA rights," by dismissing him for failing to call in sick each

day.  *See Edgar,* 443 F.3d at 508.  Allen was required to call in sick *precisely because* he was out

on leave that was undisputedly FMLA-qualified leave.  It is illogical to conclude that the termination

was "unrelated" to Allen's exercise of his rights.  Moreover, when Allen failed to comply with the

procedural requirements of the County's stricter paid leave policy, the County was within its rights

to "refuse to substitute accrued paid leave," but Allen "remain[ed] entitled to take unpaid FMLA

leave."  *See* 29 C.F.R. § 825.207 (an employee on concurrent FMLA and paid sick leave is required

to "satisfy any procedural requirements of the paid leave policy only in connection with the receipt

of such payment"); *see also Cavin*, 346 F.3d at 720 ("[T]he FMLA does not permit an employer to

---

[3]As will be discussed below, Allen's supervisor stated in his deposition that Allen had been discharged, at least in part, because he had failed to call in his sick leave on a daily basis. Allen's personnel records also state that he was discharged for "violating a company rule or policy for "improper call in of an absence." (Joint Appendix ("J.A.") at 154.)  Further, an unemployment form completed by the Butler County Auditor provided that the "final event that caused the discharge" was "6-10-03 improper call-in of an absence. Violated a Last Chance Agreement that was in place because of attendance problems." (J.A. at 155.)

limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA."). When the County terminated Allen for failing to call in sick on a daily basis, it did so improperly, and the alleged call-in violations were not a "legitimate reason" for the termination. The majority's reliance on *Edgar* is therefore misplaced.

The majority also states that under *Killian v. Yorozo Automotive Tennessee, Inc.*, "employers may rightfully terminate an employee for failure to comply with notification and medical certification procedures inherent in FMLA regulations." Slip. op. at 8 (quoting *Killian*, 454 F.3d 549, 55 (6th Cir. 2006)). That case, which addresses restrictions on leave that were expressly authorized by the FMLA, is inapposite. In *Killian*, an employer attempted to justify its termination of an employee by pointing to 29 C.F.R. § 825.310, which permits an employer to require a returning employee to provide a fitness-for-duty certification, and provides that an employee who fails to do so can be terminated. 454 F.3d at 555. This Court ultimately found that the employer had not actually requested the certification, and that the employer was not justified in terminating the employee. *Id.*

*Killian* in no way supports the majority's position. Although an employer can legally terminate an employee, under appropriate circumstances, for violating a requirement *imposed by the FMLA*, the employer in the instant case terminated Allen for violating requirements that were concededly *stricter* than the FMLA requirements. The majority's reliance on this case indicates just how little support there is for its position.

21

Finally, the majority relies heavily on the Third Circuit's decision in *Callison v. City of Philadelphia*, 430 F.3d 117, 120-21 (3rd Cir. 2005). In *Callison*, an employee was placed on an employer's "Sick Abuse List" after being absent from work twenty-six days in one year, and twelve days in the next. *Id.* at 118. This policy required Callison, while out on sick leave, to notify his employer when leaving home and upon return. *Id.* After being placed on this list, Callison was out on approved FMLA leave for approximately three months. *Id.* at 119. The employer reinstated Callison after his leave, but suspended him pursuant to its Sick Abuse policy for instances in which he failed to notify his employer when he left and returned to his home. *Id.*

Callison argued that the FMLA afforded him a right to be "left alone" when he was out on FMLA leave, and that his employer interfered with his rights when it suspended him for failing to adhere to its policy. *Id.* at 120. The *Callison* court disagreed and found that these suspensions did not violate the FMLA because the city's policy "neither prevent[ed] employees from taking FMLA leave nor discourage[d] employees from taking such leave. It simply ensure[d] that employees do not abuse their FMLA leave." *Id.*

Contrary to the majority's assertion that "the facts of this case are analogous to those of *Callison*[,]" *Callison*, like *Edgar*, did not address an employee who was out on concurrent paid and FMLA leave. The majority opinion makes no effort to reconcile its position with the specific guidance set forth in § 825.207, which explicitly provides that when an employee is out on concurrent FMLA leave, the employer can require the employee to "satisfy any procedural requirements of the paid leave policy *only in connection with the receipt of such payment.*" 29 C.F.R. § 825.207; *see also Cavin*, 346 F.3d at 720 ("[T]he FMLA does not permit an employer to

22

limit his employee's FMLA rights by denying them whenever an employee fails to comply with internal procedural requirements that are more strict than those contemplated by the FMLA.").

Notwithstanding this obvious distinction, the majority states that "we adopt the reasoning of the Third Circuit in *Callison*, that 'nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave[.]'" Slip op. at 12 (quoting *Callison*, 430 F.3d 117, 120-21 (3rd Cir. 2005)). The majority appears to reason that employers must be able to enforce their more restrictive sick leave policy to prevent employees from abusing leave, even if that means terminating an employee whose leave is covered by the FMLA. This reasoning is inherently flawed. An employer who wishes to "ensur[e] that employees who are on leave from work do not abuse their leave[,]*" see id*, can already do so without violating the FMLA by "refus[ing] to substitute accrued paid leave." *See* 29 C.F.R. § 825.207. Refusing to pay an employee on concurrent FMLA leave when he would otherwise be paid is a meaningful penalty that would discourage abuse. Then, after the employee's twelve weeks of unpaid FMLA leave expired, if an employee were to take additional non-FMLA leave and continue to abuse that leave, the employer would be permitted to take action without implicating the FMLA. What the employer cannot legally do under the FMLA and 29 C.F.R. § 825.207 is fire the employee for violations of the employer's more stringent policy while he is on FMLA leave.

For all of these reasons, the County would plainly violate the FMLA if it terminated Allen, at least in part, for failing to call in on a daily basis, and the majority's conclusions to the contrary are completely unsupported. It is therefore inappropriate to remand with orders that the district court grant summary judgment to the County, and I dissent as to the majority's holding in that regard.

II.

The majority opinion also completely disregards material factual disputes pertaining to whether Allen was fired for reasons related to the exercise of his FMLA rights. Because of these genuine issues of material fact, I believe it would be inappropriate to grant summary judgment to *either party* in this case.

The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1). To prevail under a FMLA interference theory, which is the theory pursed by Allen, the employee must establish:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2);
>
> (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4);
>
> (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1);
>
> (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and
>
> (5) the employer denied the employee FMLA benefits to which he was entitled.

*Cavin*, 346 F.3d at 719. The first four elements are not contested by the parties. However, the parties disagree as to whether the County denied Allen FMLA benefits to which he was entitled.

24

Allen can establish that he was denied FMLA benefits if he can prove that he was disciplined or terminated, at least in part, because he exercised his FMLA rights. *See id.* at 726. In a case like this, where the employer-employee relationship has broken down and when an employee has already taken leave on multiple occasions for arguably minor health issues, there is a question as to whether the employer actually dismissed him for the stated reasons, or whether it dismissed him for an impermissible reason—*e.g.*, because it felt he was an employee who took too much leave. The issue is one of causation which necessarily involves considerations of pretext. If the County utilized the alleged disciplinary infractions merely to justify actions that were truly based on protected FMLA conduct, the employer's actions violated the FMLA. *See id.* ("[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA.") (internal quotation marks and citation omitted).

Reasonable jurors could reach different conclusions with regard to whether Allen was disciplined and/or terminated, at least in part, for protected FMLA conduct. The County presents evidence that Allen was *actually* disciplined for a number of performance issues that were unrelated to the FMLA or any medical issues. This is part of its "same result anyway" defense. For example, the County presented evidence that Allen was issued "Pre-Disciplinary Hearing Notices" that charged him with failing to complete required tasks and with making inappropriate comments about his supervisor in February 2003; with failing to complete assignments, failing to follow directives, and exhibiting poor communication skills in June 2003; with failing to provide requested documentation regarding calibration of required regulatory reports in October 2003; and with improperly flexing his time in June 2004. The County argues that it was entitled to, and that it did,

fire him for reasons completely unrelated to the FMLA. A reasonable jury could credit these arguments and find in favor of the County, and it was therefore improper to grant partial summary judgment to Allen on the issue of liability. *See Edgar*, 443 F.3d at 508 (clarifying that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct).

Allen, in contrast, presented evidence that he had worked for approximately ten years without disciplinary action, and that his alleged disciplinary problems did not begin until he began to take leave for medical issues. He presented evidence that he suffered from valid medical issues, supplied physician statements documenting these issues, and argued that many of the alleged disciplinary infractions occurred on the heels of a medical absence from work. In light of this evidence, a jury could reasonably infer that the County did not approve of Allen's repeated absences and the amount of FMLA leave he used, and that these issues were the true cause of his termination. Because the motivations behind the County's actions and the truth of the County's allegations underlying his disciplinary writeups constitute genuine issues of material fact, the case should have been submitted to the jury and the majority's chosen remedy—summary judgment in favor of the County—is inappropriate. *See Cavin*, 346 F.3d at 726.

Finally, and importantly, Allen also presented evidence that he was, in fact, fired because of his failure to call in his absences. Allen's supervisor stated in his deposition that Allen had been discharged, at least in part, because he had failed to call in his sick leave on a daily basis. Allen's personnel records also state that he was discharged for "violation of a last chance agreement" by violating a company rule or policy for "improper call in of an absence." (J.A. at 154.) These were

26

the only reasons provided for Allen's termination on this form. Further, an unemployment form completed by the Butler County Auditor provided that the "final event that caused the discharge" was "6-10-03 improper call-in of an absence. Violated a Last Chance Agreement that was in place because of attendance problems." (J.A. at 155.) All of these facts would permit a reasonable jury to decide that Allen was terminated because he failed to call his absences on a daily basis. As discussed above, under 29 C.F.R. § 825.207 and the FMLA, an employer cannot legally terminate an employee for violations of the employer's more stringent policy while he is on concurrent FMLA leave. The jury could have properly found that Allen was terminated because he failed to call in sick, and that his termination on these grounds violated the FMLA.

In sum, given the contested facts in this case, a reasonable jury could have found for either Allen or the County. I therefore conclude that summary judgment should not have been entered in favor of either party and that the district court erred in granting partial summary judgment to Allen.

III.

While, for the reasons stated above, I would find that the district court should not have granted partial summary judgment to Allen, I will also address the path that the district court did take and why I think it was improper.

The district court granted partial summary judgment in Allen's favor, holding that the County had interfered with Allen's FMLA rights by terminating his employment based, at least in part, on his failure to call in to report his absences. The court reserved the issue of damages for trial and allowed the County to present its "same result anyway" defense at the bifurcated damages portion of the trial. As part of this defense, the County argued that even if it was improper to terminate Allen

27

based on his failure to call in his absences, it would have fired him for performance issues that were unrelated to the FMLA.[4]

The district court's decision to bifurcate the trial requires us to assess whether the County's "same result anyway" defense was an issue pertaining to liability, or whether it was an issue that could have properly been resolved at a trial that was limited to the issue of damages. Because this defense is part and parcel of the liability determination, I conclude that it was improper for the district court to allow the County to present it in the bifurcated damages trial.

Prior to trial, Allen filed two motions *in limine*, arguing that Court should have prohibited the County from presenting evidence that Allen was not prejudiced by any interference with his FMLA rights. The district court denied the motions.[5] On appeal to this Court, Allen argued that

---

[4]As stated above, the County presented evidence that Allen was issued "Pre-Disciplinary Hearing Notices" that charged him with failing to complete required tasks and with making inappropriate comments about his supervisor in February 2003; with failing to complete assignments, failing to follow directives, and exhibiting poor communication skills in June 2003; with failing to provide requested documentation regarding calibration of required regulatory reports in October 2003; and with improperly flexing his time in June 2004.

[5]At a pre-trial motions conference, the district court stated:

> With regard to the defendants' motion *in limine* to exclude evidence of alleged FMLA interferences and damages prior to the Last Chance Agreement, I think that's well-taken. I think the Last Chance Agreement should be the cutoff point for evidence from either the defendant or the plaintiff. It is what it is. I don't want to get into a lot of side issues as to whether the Last Chance Agreement was fair or reasonable or there was sufficient progressive discipline prior to it. As I said, it is what it is.

Mot. Conf. Tr. at 5.

28

the district court abused its discretion when it denied Allen's motion *in limine* and admitted evidence that the County would have discharged Allen for reasons unrelated to the FMLA.

Allen first argued that the "same result anyway" defense was not admissible to show whether a party was prejudiced by alleged FMLA interference. He argued that *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001), is directly on point and compelled a result in his favor. In *Bachelder*, the court stated that "there is no room for a . . . pretext analysis when evaluating an 'interference' claim under this statute [the FMLA]. . . . [T]he regulations clearly prohibit the use of FMLA-protected leave as a negative factor at all." *Id.* at 1131.

This argument contradicts binding precedent from this circuit and the Supreme Court. This Court has held, in the context of a FMLA interference claim, that "the FMLA is not a strict-liability statute" and that employees seeking relief must still "establish that the employer's violation caused them harm." *Edgar*, 443 F.3d at 507-08 (collecting cases). This Court clarified that "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* at 508. Moreover, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002), the Supreme Court held that a plaintiff asserting a claim based on a violation of the FMLA must demonstrate prejudice as a result of a defendants alleged violation of the FMLA. The County properly notes that *Bachelder* was decided prior to the Supreme Court's decision in *Ragsdale*, 535 U.S. 81. *See Coker v. McFaul*, 247 F. App'x 609, 619 (6th Cir. 2007) (noting that *Ragsdale* effectively overruled *Bachelder* on the issue of whether prejudice must be shown in a FMLA claim). Allen's arguments therefore lack merit

under *Edgar* and *Ragsdale*, and the "same result anyway" defense was clearly relevant to show whether a defendant was prejudiced by a FMLA violation.[6]

In this case, however, the more important question is *when* and *by whom* evidence regarding the defense should have been considered. The issue of causation is part of Allen's prima facie claim, *see Cavin*, 346 F.3d at 719, and therefore, it should have been considered along with other evidence relating to the County's liability. Because the issue of liability was resolved in the district court's motion for summary judgment, the district court prohibited Allen from presenting evidence about circumstances surrounding the medical leave that Allen took in the past, and the disciplinary actions that occurred at or around the same time. *See* Mot. Conf. Tr. at 5.

Under those circumstances, the jury was unable to properly assess whether the alleged disciplinary issues were pretext, and/or whether FMLA-related absences were the true cause of Allen's termination. Although the trial was ostensibly limited to the issue of damages, the jury—in considering the "same result anyway" defense—effectively considered the liability issue anyway. Because it did so under circumstances in which only the County was permitted to fully set forth its theory of liability to the jury, the district court's ruling was improper.

---

[6]Allen also argued that the County waived that argument because it did not allege its defense in its answer to his complaint. This argument lacks merit. In the Sixth Defense of the County's answer to the complaint, the County stated that "Plaintiff is estopped from asserting these claims by his own conduct." (J.A. at 170.) The Tenth Defense stated, "Any damages incurred by Plaintiff, which are denied by Defendant, are the direct result of Plaintiff's own conduct." (*Id.*) These statements were sufficient to give Allen notice of the positions and defenses of the County, and Allen's arguments regarding waiver therefore lack merit. *See Blonder-Tongue Lab. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971) (explaining that pleadings under Fed. R. Civ. P. 8(c) are notice pleadings and are designed to put a party on notice of the positions and defenses of the opposing party).

Consequently, I conclude that it was improper for the district court to allow the jury to consider evidence that Allen would have been fired for reasons unrelated to the FMLA in the context of a bifurcated damages trial, while preventing Allen from presenting evidence pertinent to the same issue. As stated above, given the contested facts regarding liability, the district court should have put the entire case, including the issue of liability under the FMLA, before the jury.

## IV.

For the reasons stated above, I disagree with the majority's decision to remand the case with instructions to grant summary judgment in favor of the County. Instead, I would reverse the district court's grant of partial summary judgment to Allen, and would remand the case for a jury trial as to all issues. I therefore respectfully dissent.